ALEX WASLEFF, JR., as Ex'r of the Estate of Alex Wasleff, Sr., Deceased, Plaintiff-Appellant, v. ASTAIRRE M. DEVER *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—87—2026

Opinion filed January 22, 1990.

148

149

Thomas E. Buess, of Chicago, for appellant.

Law Offices of Jeffrey M. Marks, of Chicago (Jeffrey M. Marks, of counsel), for appellee Astairre M. Dever.

Hopkins & Sutter, of Chicago (Paul K. Vickrey, of counsel), for appellee Continental Illinois National Bank and Trust Company of Chicago.

JUSTICE MANNING delivered the opinion of the court:

Plaintiff, Alex Wasleff, Jr., executor of the estate of Alex Wasleff, Sr., brought this action against his sister, Astairre Dever, and Continental Illinois Bank and Trust Company of Chicago (Continental Bank). This action arises out of a transaction whereby Continental Bank released $40,000 to Astairre Dever from a trust account of Alex Wasleff, Sr. Wasleff, Sr., filed this action on March 17, 1982. Claims against Patrick Dever, the Northern Trust Company and the Harris Trust & Savings Bank were resolved prior to trial. On October 19, 1982, Wasleff, Sr., died, and his estate was substituted as the plaintiff in this action with Wasleff, Jr., as the executor, representing the estate. Items included in Wasleff, Sr.'s estate were listed in his will and identified in the inventory of the estate prepared by counsel after Wasleff, Sr.'s death. Although claims were listed against both of Wasleff, Sr.'s daughters, no claim was listed against Continental Bank. At the close of the plaintiff's case in chief, the trial court entered a directed finding for Astairre Dever. Subsequently, judgment was also entered in favor of Continental Bank. Plaintiff appeals the trial court's decisions.

On April 9, 1981, Astairre Dever withdrew $40,000 from a Totten trust of Alex Wasleff, Sr., as trustee, opened for the benefit of Alex Wasleff, Jr. A similar account was opened at the Northern Trust Bank by Wasleff, Sr., as trustee, for the benefit of his daughter, Astairre Dever (Astairre). Matthew Cook, division director for Continental Bank, testified that the funds in both accounts were for the use of Wasleff, Sr., during his lifetime and upon his death were to insure to the benefit of the respective beneficiaries. Astairre and Wasleff, Jr., testified that while the signature card and agreement for the Totten trust in issue contained only the signature of Wasleff, Sr., Wasleff, Sr.'s wife had handled all of his financial affairs until her death. They further testified that upon her death defendant, Astairre, began taking care of her father's financial concerns, which included: (1) the payment of all of his living .expenses; (2) maintaining custody of his checkbooks and passbooks to his personal bank accounts; (3) depositing money into his personal accounts; and (4) routinely signing her father's name to checks and withdrawals.

Astairre testified that in April 1981, the family business, Alex Wasleff Building Maintenance Company, of which Wasleff, Sr., was the principal shareholder, encountered financial difficulty and the business

was threatened with a shut down by the Internal Revenue Service (IRS) for outstanding Federal tax obligations. Wasleff, Jr., served as the vice-president of the business, and Astairre served as secretary-treasurer. In that capacity, she was responsible for the payment of business taxes and the withholding of tax deposits for the business. Astairre further testified that on April 9, 1981, upon instructions from Wasleff, Sr., she withdrew $37,000 from the Northern Trust Bank trust account and $40,000 from the Continental Bank trust account by signing her father's name to the withdrawal slips. The IRS had assessed a $300,000 family business tax indebtedness as a lien against Wasleff, Jr., and the purpose of the withdrawals was to pay the IRS $100,000 of the $300,000 due to reduce the family's tax indebtedness.

A manager at Continental Bank testified that the signature on the withdrawal slip did not match the signature on the trust account's signature card. Sally Churn, the Continental Bank employee who handled the transaction, testified that she made an unsuccessful attempt to reach Wasleff, Sr., by telephone in order to verify the withdrawal. She further testified that after Astairre explained that her father was elderly and could not conduct his business, and presented the passbook and proper identification, and since it was time to pay taxes, she released the money to Astairre in the form of a cashier's check payable to the IRS.

Wasleff, Jr., testified that he informed Wasleff, Sr., who was both physically and mentally infirm, that Astairre used the $40,000 from the Continental Bank account for her own personal use. Moreover, Wasleff, Sr., was never told before his death that the money was used to reduce the family's business debt. The business was actually closed by the IRS in July 1981.

During the trial, Astairre testified regarding her conversations with her father prior to his death concerning the withdrawals. Additionally, Astairre and other witnesses testified about other financial transactions that Astairre was involved in on behalf of the business. Wasleff, Jr., also testified during the trial regarding the content of two conversations held between himself and Wasleff, Sr., pertaining to the $40,000 withdrawal from the Continental Bank account. Audrey Hunter, his sister, was present during the first conversation, and attorney Joseph O'Callanhan was present during the second conversation. Specifically, the following occurred:

"Q. What if anything, did your father say when you told him about the withdrawal[?]

A. He said no one was supposed to withdraw that money."

Wasleff, Jr., further testified that: (1) Astairre handled Wasleff, Sr.'s personal affairs; (2) she possessed passbooks and checkbooks to Wasleff, Sr.'s personal bank accounts that were given to her by Wasleff, Sr.; (3) Astairre made deposits into Wasleff, Sr.'s personal bank accounts; and (4) Wasleff, Sr., gave Astairre permission to sign his name to his personal checks.

On May 21, 1987, judgment was entered for Astairre. The trial court held that Astairre did not convert the funds received from Continental Bank, finding instead that Wasleff, Sr., either expressly or impliedly, authorized the transactions. On May 22, 1987, the trial court entered judgment for Continental Bank, holding that Wasleff, Sr., authorized the withdrawal. In a detailed analysis the trial court discussed Astairre's express, implied or ratified authority and Wasleff, Sr.'s contribution to the withdrawal. The trial court further discussed the lack of damage suffered by the estate as a result of the withdrawal and the failure of the plaintiff to show that a valid claim of the Wasleff estate existed. Plaintiff appeals from these judgments.

■ We must first determine whether Wasleff, Sr.'s cause of action abated with his death. It should be noted that abatement of actions because of death is not favored by our supreme court. (See *Murphy v. Martin Oil Co.* (1974), 56 Ill. 2d 423, 308 N.E.2d 583.) Section 27—6 of the Probate Act of 1975 provides:

> "Actions which survive. In addition to the actions which survive by the common law, the following also survive: actions of replevin, actions to recover damages for an injury to the person (except slander and libel), actions to recover damages for an injury to real or personal property or for the detention or conversion of personal property, actions against officers for misfeasance, malfeasance, nonfeasance of themselves or their deputies, actions for fraud or deceit, and actions provided in Section 6—21 of 'An Act relating to alcoholic liquors.' " Ill. Rev. Stat. 1987, ch. 110½, par. 27—6.

It is well established that the Illinois survival statute allows a decedent's representative to maintain those common law or statutory actions which had already accrued to the decedent prior to his death. (*National Bank v. Norfolk & Western Ry. Co.* (1978), 73 Ill. 2d 160, 172, 383 N.E.2d 919; *Menery v. Citizens First National Bank* (1987), 160 Ill. App. 3d 223, 225, 513 N.E.2d 553; *Raisl v. Elwood Industries, Inc.* (1985), 134 Ill. App. 3d 170, 172, 479 N.E.2d 1106; *Rodgers v. Consolidated R.R. Corp.* (1985), 136 Ill. App. 3d 191, 196, 482 N.E.2d 1080.) Since Wasleff, Sr.'s claim is based on the alleged conversion of personal property, the claim survived his death, pursuant to

the Illinois survival statute. Therefore, Wasleff, Jr., as the executor of the estate, was a proper party to bring this action.

Plaintiff initially argues on appeal that the Dead Man's Act (Ill. Rev. Stat. 1987, ch. 110, par. 8—201) was violated when the trial court admitted into evidence conversations held between Astairre and Wasleff, Sr., regarding his authorization of the withdrawal of the $40,000 that were not witnessed. Plaintiff further argues that the Dead Man's Act was violated when the trial court erroneously allowed Astairre to testify regarding conversations held with her father pertaining to the receipt and return of her father's personal passbooks and checkbooks. The plaintiff's arguments are without merit. The object of the Dead Man's Act is fundamental fairness. (*Vazirzadeh v. Kaminski* (1987), 157 Ill. App. 3d 638, 645, 510 N.E.2d 1096.) The Dead Man's Act provides in pertinent part as follows:

"In the trial of any action in which any party sues or defends as the representative of a deceased person or persons under a legal disability, no adverse party or person directly interested in the action shall be allowed to testify on his or her own behalf to any conversation with the deceased or person under legal disability or to any event which took place in the presence of the deceased or person under legal disability, except in the following instances:

(a) If any person testifies on behalf of the representative to any conversation with the deceased or person under legal disability \*\*\*, any adverse party or interested person, if otherwise competent, may testify concerning the same conversation or event." Ill. Rev. Stat. 1987, ch. 110, par. 8—201.

In *Zorn v. Zorn* (1984), 126 Ill. App. 3d 258, 464 N.E.2d 879, where the issue involved the signing of a deed, we addressed the meaning of the word "event." After reviewing cases from other jurisdictions, we determined that "event" includes all of the connected incidents and conversations leading up to the signing of the deed. (*Zorn*, 126 Ill. App. 3d at 263.) In the instant case, the "event" was Astairre's withdrawal of the $40,000 from Continental Bank, and Wasleff, Jr., waived any protection provided by the Dead Man's Act. Specifically, Wasleff, Jr., testified during trial, while presenting his case in chief, as to conversations held with his father about the $40,000 withdrawal from the Continental Bank account. Moreover, his testimony established that Astairre was authorized to make the withdrawal when he stated that: (1) Astairre handled Wasleff, Sr.'s personal affairs; (2) she possessed passbooks and checkbooks to Wasleff, Sr.'s personal bank accounts that were given to her by Wasleff, Sr.;

154

(3) Astairre made deposits into Wasleff, Sr.'s personal bank accounts; and (4) Wasleff, Sr., gave Astairre permission to sign his name to personal checks. Furthermore, since Wasleff, Jr., in his complaint and through his 1984 deposition testimony, which was admitted at trial, asserted that Astairre was not authorized to sign Wasleff, Sr.'s name to the withdrawal slip, Astairre was entitled to testify as to the conversations that she had with Wasleff, Sr., granting her authority to withdraw monies from the various bank accounts to reduce the family's tax indebtedness to the IRS.

■ The purpose of the exception in the Dead Man's Act which permits testimony regarding the same conversation or transaction is to allow both parties to be on equal grounds in giving testimony (*Bain v. Schnorr* (1976), 35 Ill. App. 3d 761, 764, 342 N.E.2d 439; *Firke v. McClure* (1945), 389 Ill. 543, 551, 60 N.E.2d 220), and but for the exception set forth in the Dead Man's Act, the defendants would not have been on equal ground in defending plaintiff's claim of an unauthorized withdrawal. In the absence of the exception to the Dead Man's Act, Wasleff, Jr., would have been allowed to assert that Astairre did not have the authority to withdraw the monies and then raise the Dead Man's Act as a bar to Astairre's testimony that authority to withdraw the monies had been granted by Wasleff, Sr. (See *Bain*, 35 Ill. App. 3d 761; *Firke*, 389 Ill. at 551.) We, therefore, conclude that the Dead Man's Act does not bar Astairre's conversations with Wasleff, Sr. Since Astairre could properly testify as to the authority granted to her by Wasleff, Sr., the trial court properly admitted the testimony of Astairre regarding conversations held between herself and Wasleff, Sr.

■ Plaintiff next contends that the trial court improperly admitted evidence of transactions other than the Continental Bank transaction, since the writing of checks from other accounts is irrelevant to establish Astairre's authority to withdraw $40,000 from the Totten trust at Continental Bank. Defendants argue that the evidence that Astairre has conducted all of Wasleff, Sr.'s financial affairs for eight years is relevant to establish that the transaction at issue was authorized. " 'Relevancy is established where a fact offered tends to prove a fact in controversy or renders a matter in issue more or less probable.' " (*People v. Monroe* (1977), 66 Ill. 2d 317, 321, 362 N.E.2d 295, quoting *Marut v. Costello* (1966), 34 Ill. 2d 125, 128, 214 N.E.2d 768.) Moreover, evidence of other specific similar acts may be admitted for the purpose of proving habit, and in many instances a person's conduct on other occasions is the best evidence to establish facts in controversy. (*People v. Tipton* (1980), 78 Ill. 2d 477, 485-86, 401

N.E.2d 528.) It is well established that "habit testimony is relevant and the only limitations imposed on its admission have been on the basis of necessity." (*Bradfield v. Illinois Central Gulf R.R. Co.* (1987), 115 Ill. 2d 471, 475-76, 505 N.E.2d 331; *Hardware State Bank v. Cotner* (1973), 55 Ill. 2d 240, 302 N.E.2d 257; *Plank v. Holman* (1970), 46 Ill. 2d 465, 264 N.E.2d 12.) Furthermore, our courts have adopted Rule 406 of the Federal Rules of Evidence (Fed. R. Evid. 406), which establishes that habit evidence is always admissible for the purpose of proving the conduct of a person or business organization. (*Bradfield v. Illinois Central Gulf R.R. Co.* (1985), 137 Ill. App. 3d 19, 23, 484 N.E.2d 365, *aff'd* (1987), 115 Ill. 2d 471, 505 N.E.2d 331.) Rule 406 provides as follows:

"Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice." Fed. R. Evid. 406.

█ In the instant case, the testimony revealed that Astairre routinely signed her father's name to checks and withdrawals. In addition to Astairre's testimony that she had signed her father's name hundreds of times while handling his financial affairs, Wasleff, Jr., testified that: (1) Astairre possessed Wasleff, Sr.'s "passbooks and checkbooks to his various personal bank accounts"; (2) Wasleff, Sr., had given Astairre permission to sign his name on his personal checks; and (3) Wasleff, Jr., had witnessed the signing of Wasleff, Sr.'s name on checks and withdrawals by Astairre on many occasions. Based on the above, we conclude that the trial court properly admitted other similar transactions as relevant for the limited purpose of establishing habit.

█ Plaintiff next argues that the trial court erroneously admitted irrelevant evidence that Wasleff, Jr., had been individually assessed a penalty by the IRS for failure of the Alex Wasleff Building Maintenance Company to pay Federal withholding taxes. Defendants argue that Wasleff, Jr.'s tax liability is relevant to this cause of action since he is the sole beneficiary of the estate and received a direct benefit. It should be noted that neither Wasleff, Jr., nor Astairre has cited any case law to support their positions on this issue. Pursuant to Supreme Court Rule 341(e)(7) (107 Ill. 2d R. 341(e)(7)), an appellant's brief must contain citations to the relevant authority in support of the argument raised on appeal. (*Lunde v. Rockford Public Library Board* (1987), 153 Ill. App. 3d 803, 805, 506 N.E.2d 385.) Moreover, it is well settled

that a contention that is supported by some argument but does not cite any authority does not satisfy the requirements of Supreme Court Rule 341(e)(7) (*Lunde*, 153 Ill. App. 3d at 806; *Fuller v. Justice* (1983), 117 Ill. App. 3d 933, 942-43, 453 N.E.2d 1133; *Wilson v. Continental Body Corp.* (1981), 93 Ill. App. 3d 966, 969, 418 N.E.2d 56), and bare contentions that fail to cite any authority do not merit consideration on appeal. (*People ex rel. Aldworth v. Dutkanych* (1986), 112 Ill. 2d 505, 493 N.E.2d 1037.) Arguments unsupported by citation to legal authority are considered as waived by a court of review. (*Lunde*, 153 Ill. App. 3d at 806; *Nancy's Home of the Stuffed Pizza, Inc. v. Cirrincione* (1986), 144 Ill. App. 3d 934, 939, 494 N.E.2d 795; *In re Marriage of Drummond* (1987), 156 Ill. App. 3d 672, 685, 509 N.E.2d 707.) Thus, we will not address plaintiff's assertion that the trial court erred in admitting testimony regarding the transaction's effect on Wasleff, Jr.'s tax liability.

■ Plaintiff also maintains that the real issue to be determined is whether Astairre had the authority to withdraw the $40,000 from Continental Bank, specifically alleging that Astairre converted the funds for her own personal use. In order to resolve this issue, we must ascertain whether an agency relationship existed between Wasleff, Sr., and Astairre authorizing Astairre to withdraw money from the Continental Bank trust account. The existence of an agency relationship may be shown by direct or circumstantial evidence, and where the evidence shows that one person is acting for others under circumstances implying knowledge on the part of the principal of those acts, a *prima facie* case of agency is established. *Mateyka v. Schroeder* (1987), 152 Ill. App. 3d 854, 862-63, 504 N.E.2d 1289; *City of Evanston v. Piotrowicz* (1960), 20 Ill. 2d 512, 518, 170 N.E.2d 569, 573.

■ In the present case, Astairre's testimony established the existence of an agency relationship between herself and Wasleff, Sr. Several witnesses, including Wasleff, Jr., testified to the fact that Astairre handled Wasleff, Sr.'s financial affairs, including the payment of all of his living expenses. Moreover, in her capacity as secretary-treasurer, she was responsible for the financial affairs of the business. It is undisputed that Astairre was acting on behalf of Wasleff, Sr., and that he had knowledge that she was handling his financial affairs. Therefore, we conclude that an agency relationship existed. Since the evidence has shown that an agency relationship exists, we must now determine the extent of the agency.

■ An agent may have actual authority to act on behalf of a principal which is expressed or implied or the agent may have appar-

ent authority. Implied authority is actual authority that is implied by facts and circumstances, and it may be proved by circumstantial evidence. (*Devers v. Prudential Property & Casualty Insurance Co.* (1980), 86 Ill. App. 3d 542, 545-46, 408 N.E.2d 462, 465.) Apparent authority exists where a principal, through his words or conduct, creates a reasonable impression that the agent has been granted the authority to perform certain acts. (*Hofner v. Glenn Ingram & Co.* (1985), 140 Ill. App. 3d 874, 882, 489 N.E.2d 311.) The extent of the agency relationship may be established by circumstantial evidence. (*Hofner*, 140 Ill. App. 3d at 880; *Schoenberger v. Chicago Transit Authority* (1980), 84 Ill. App. 3d 1132, 1137, 405 N.E.2d 1076, 1080.) Moreover, the extent of an agent's authority may also be shown by ascertaining what a reasonably prudent person exercising diligence and discretion in dealing with the agent might believe the agent to possess based on the principal's conduct. *Hofner*, 140 Ill. App. 3d at 882; *Barraia v. Donoghue* (1977), 49 Ill. App. 3d 280, 283, 364 N.E.2d 952, 954.

In the case at bar, Astairre acted on behalf of Wasleff, Sr., for years in handling his financial affairs, including the payment of all of his living expenses, maintaining custody of checkbooks and passbooks to his personal bank accounts, depositing money into his personal accounts and routinely signing her father's name to checks and withdrawals. Upon a review of all the circumstances and actions that occurred prior to the event of withdrawing the $40,000, we feel that an ordinary prudent person would believe that Astairre was acting on behalf of Wasleff, Sr. We, therefore, conclude that under the facts of this case, Astairre was authorized to withdraw the funds from the Continental Bank trust account for direct payment to the IRS to reduce the family business indebtedness.

Plaintiff asserts that Astairre converted the $40,000 for her own personal use. It is well settled that in order to establish a cause of action based on conversion, the party claiming that a conversion has occurred must show: (1) an unauthorized and wrongful assumption of control, dominion, or ownership by the defendant over the personal property of another; (2) plaintiff has a right to the property; (3) plaintiff has an absolute and unconditional right to the immediate possession of the property; and (4) plaintiff has made a demand for possession of the property. (*Pasulka v. Koob* (1988), 170 Ill. App. 3d 191, 209, 524 N.E.2d 1227; *First National Bank v. Lachenmyer* (1985), 131 Ill. App. 3d 914, 917, 476 N.E.2d 755; *A.T. Kearney, Inc. v. INCA International, Inc.* (1985), 132 Ill. App. 3d 655, 664, 477 N.E.2d 1326; *Farns Associates Inc. v. Sternback* (1979), 77 Ill. App.

3d 249, 252, 395 N.E.2d 1103; see also *Katz v. Belmont National Bank* (1986), 112 Ill. 2d 64, 68, 491 N.E.2d 1157.) " '[A] conversion is any unauthorized act, which deprives a man of his property permanently or for an indefinite time \*\*\*.' " (*In re Thebus* (1985), 108 Ill. 2d 255, 259, 483 N.E.2d 1258, quoting *Union Stock Yard & Transit Co. v. Mallory, Son & Zimmerman Co.* (1895), 157 Ill. 554, 563.) Moreover, " '[t]he essence of conversion is the wrongful deprivation of one who has a right to the immediate possession of the object unlawfully held.' " *Thebus*, 108 Ill. 2d at 259, quoting *Bender v. Consolidated Mink Ranch, Inc.* (1982), 110 Ill. App. 3d 207, 213, 441 N.E.2d 1315.

█ The record discloses that plaintiff failed to carry his burden of proving the first element for establishing conversion, which is that Astairre's signature was an unauthorized and wrongful assumption of control over Wasleff, Sr.'s accounts. Since a necessary element of conversion was not established, we hold that the trial court properly ruled that Astairre did not convert the funds received from Continental Bank.

█ A court of review will not disturb the determination of a trial court unless the finding is against the manifest weight of the evidence. (*Spec-Cast, Inc. v. First National Bank & Trust Co.* (1989), 128 Ill. 2d 167, 177, 538 N.E.2d 543; *Menicocci v. Archer National Bank* (1978), 67 Ill. App. 3d 388, 391, 385 N.E.2d 63.) Moreover, a judgment is only against the manifest weight of the evidence where an opposite conclusion is clearly apparent. (*Spec-Cast, Inc. v. First National Bank & Trust Co.* (1987), 168 Ill. App. 3d 615, 617, 522 N.E.2d 586; *Menicocci*, 67 Ill. App. 3d at 391.) After a careful review of the record we cannot conclude that the decisions of the trial court were against the manifest weight of the evidence. Accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

CAMPBELL\* and O'CONNOR, JJ., concur.

---

\*Justice Campbell participated in this opinion after the resignation of Justice Quinlan, who had participated in the oral argument. Justice Campbell has read the briefs and listened to a tape of oral argument.