# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re Marriage of Johnson*, 2011 IL App (1st) 102826

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF PAMELA JOHNSON, Petitioner, and ERIC JOHNSON, Respondent-Appellee (Arthur M. Berman and Daniel C. Meenan, Jr., Additional Party Respondents-Appellants). |
| District & No. | First District, Fifth Division<br>Docket Nos. 1-10-2826, 1-10-2827 cons. |
| Filed | December 23, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a marriage dissolution proceeding in which the trial court granted respondent summary judgment as to petitioner's petition under section 2-1401 of the Code of Civil Procedure seeking relief from the final judgment based on allegations that respondent failed to disclose material facts during the proceedings, the portion of the trial court's order granting respondent's motion for sanctions under Supreme Court Rule 137 as to petitioner's counsel was vacated on the grounds that the record did not establish what her counsel knew or should have known, there was a difference between what petitioner knew and what her counsel knew, petitioner was given the opportunity to be represented by counsel and to defend against the claim for sanctions, her counsel, who had withdrawn due to the conflict of interest, were not, and the cause was remanded for an evidentiary hearing on whether sanctions would be appropriate. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 03-D-4994; the Hon. Kathleen G. Kennedy, Judge, presiding. |
| Judgment | Vacated and remanded. |

| Counsel on Appeal | Marvin J. Leavitt and David C. Adams both of Grund & Leavitt, P.C., of Chicago, for appellants. |
| | |
| | Paul L. Feinstein, of Paul L. Feinstein, Ltd., and Robert H. Hirsch, of Law Offices of Robert H. Hirsch, both of Chicago, for appellee. |
| | |
| Panel | JUSTICE McBRIDE delivered the judgment of the court, with opinion. Presiding Justice Epstein and Justice Quinn concurred in the judgment and opinion. |

**OPINION**

¶ 1     Petitioner Pamela Johnson and respondent Eric Johnson entered into a divorce settlement in December 2004. Petitioner was represented in the divorce proceedings by additional party respondents Arthur M. Berman and Daniel C. Meenan, Jr. In December 2006, petitioner, represented by Berman and Meenan, filed a petition seeking relief from a final judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2006)), alleging that respondent failed to disclose material facts during the divorce proceedings. Respondent filed a motion for summary judgment, which the trial court granted, and also filed a motion for sanctions against petitioner pursuant to Supreme Court Rule 137 (Ill. S. Ct. R. 137 (eff. Feb. 1, 1994)), seeking his attorney fees and costs incurred in response to the section 2-1401 petition. The trial court granted respondent's motion for sanctions against petitioner and also *sua sponte* sanctioned Berman and Meenan for filing the section 2-1401 petition. Following an evidentiary hearing as to the amount of respondent's attorney fees and costs, the trial court ordered petitioner to pay $56,000 and Berman and Meenan to pay $56,000 in sanctions.

¶ 2     Berman and Meenan appeal, arguing that the trial court erred in sanctioning them under Rule 137. Petitioner is not a party to this appeal.

¶ 3     On December 22, 2004, the trial court entered its judgment for dissolution of marriage, which included a "Marital Settlement Agreement" (MSA) executed by petitioner and respondent. The MSA resolved all issues related to the divorce. One of the marital assets resolved in the MSA was the parties' stock ownership of Baldwin Richardson Food Company (BRF). Pursuant to the MSA, petitioner was to receive $2,800,000 from BRF as severance pay. Further, any right, title or interest held or claimed by petitioner in BRF was awarded to respondent.

¶ 4     On December 20, 2006, petitioner, represented by Berman and Meenan, filed a section 2-1401 petition for relief from judgment, seeking modification of the judgment for dissolution of marriage. The petition alleged that in October 2006, petitioner learned that prior to the dissolution judgment, respondent had concealed material facts, known and

-2-

available only to him, which he had a duty to disclose. Respondent did so with the intent to induce petitioner to agree to the resolution of the dissolution case and deprived petitioner of her fair share of the marital assets. Specifically, petitioner claimed that respondent's representations regarding BRF's value were proved to have been "intentionally inaccurate, incomplete and false."

¶ 5 Petitioner stated that BRF was formed in or about 1992 and "manufactured liquid products for the food industry, including but not limited to condiments, dessert toppings, sauces, syrups and fruit fillings." The parties owned a 63% stock interest in the company; they owned 1,550 of 2,266 outstanding shares. Petitioner stated that at times relevant to the underlying judgment, BRF's annual net sales were in the "plus $50 million range." Petitioner further stated that during the underlying proceedings respondent represented to her that BRF was in a precarious financial position with considerable debt. In June 2004, a valuation report of the parties' marital interest in BRF valued the stock at $6 million.

¶ 6 Petitioner alleged that in or about October 2006, she read an article that had been published in the June 2006 edition of Black Enterprise Magazine. The article stated that BRF had acquired the "Industrial Bakery Ingredients division of J.M. Smucker Co." in 2005. "The deal–valued at $30 million–allowed [BRF] to expand its bakery capabilities and grow gross sales by 26% in 2005." Petitioner also stated that she spoke with two of her daughters, both of whom are managers for BRF. They indicated to petitioner that BRF had committed to proceed with the acquisition prior to December 2004. Petitioner was also informed that respondent told their daughters that he did not want the deal to become part of the divorce settlement and not to relate any facts of the deal to petitioner. Petitioner attached an affidavit from one of her daughters to the petition that supported these allegations. Based on this information, petitioner alleged that BRF's acquisition would substantially increase BRF's sales volume and have an impact on the company's value.

¶ 7 In her section 2-1401 petition, petitioner asserted that respondent concealed material facts related to BRF and she relied on these misrepresentations when settling her marriage dissolution. Petitioner requested that the judgment be reopened and modified to reflect an increase in the value of BRF.

¶ 8 In June 2008, respondent filed a motion for summary judgment. In his motion, respondent contended that petitioner admitted in a deposition that she and her attorneys knew or should have known about the Smuckers deal no later than December 1, 2004, prior to the dissolution judgment.

¶ 9 Respondent attached excerpts from petitioner's two depositions as exhibits to his motion. The record on appeal does not appear to contain the full transcripts of petitioner's depositions. On March 19, 2008, petitioner testified at her first deposition that the first time she learned of the Smuckers deal was in October 2006 and had no prior knowledge between December 2004 and October 2006. She also stated that she had placed a "Google Alert" on her computer for any articles concerning BRF and said that she did not receive any articles involving the Smuckers deal until 2006.

¶ 10 However, at her April 16, 2008, deposition, petitioner clarified that she heard a "rumor" in December 2004. The excerpt of the deposition transcript is unclear as to petitioner's

knowledge of the Smuckers deal and her subsequent action with her attorneys. At the start of the deposition, petitioner stated that the first document she received and gave to her attorneys was an article "from Smucker's saying that they were closing a plant–you showed it to me last time–and that they wanted to talk to another company, Orville or something, and maybe discussions with [BRF], so that was the first time [she] actually had something in [her] hand." Respondent's attorney asked petitioner about a fax with pages marked as pages two through five, but there was no page one. Respondent's attorney asked if page one might have been a fax cover sheet, but petitioner said she did not remember. When asked what if anything her attorneys did with this information, petitioner testified that "they talked to [respondent] and they talked to [respondent's attorney]." She stated that she "was sitting on the phone–[she] was sitting in front of [Meenan] in his office and [she] heard him talk to [respondent's attorney]." Petitioner said she did not "remember exactly" what Meenan told respondent's attorney, but she believed that "he made [respondent's attorney] aware that [she] was questioning about this article, and the response [petitioner] got back was that there was nothing up, nothing to it." Petitioner admitted that she did not hear respondent's attorney give this response. Petitioner also did not know the exact date this conversation took place, but thought it was "pretty close to settlement," which the record indicates occurred in December 2004. Petitioner did not remember if Meenan called respondent's attorney or if respondent's attorney called Meenan. She did not remember if this occurred in the morning or the afternoon. Petitioner stated that only she and Meenan were present in his office. She heard Meenan talking, but could not remember what he said. When asked if she had any further discussions on this subject, petitioner answered, "no." She said after this conversation she "forgot about it."

¶ 11 However, when asked a second time if she only discussed the matter one time, petitioner said, "no, that's not true." Respondent's attorney asked again if petitioner spoke with Meenan about the article after she faxed it to him, she responded that she did, but could not "remember exactly" if she called him or went to his office. Petitioner stated that "I talked to him, but I don't remember if I called him that morning or I don't remember if I–I thought that I brought a copy of this and put it where we were working on it. It wasn't the focus." She could not "remember exactly" how many times she discussed the article with her attorneys. When asked if it was more than once, petitioner answered that she thought it was, but could not recall.

¶ 12 Respondent's attorney asked petitioner if she asked either of her attorneys to find out about this article, and petitioner responded that she did and that she "heard" her attorney ask respondent's attorney, though she did not "remember exactly what he asked." Petitioner then testified that she did not know if either of her attorneys checked this out further and she did not ask them if they had. Petitioner said that she "made an assumption" that if respondent said "there was nothing up and then [she] heard [Meenan] ask [respondent's attorney] on the phone and [respondent's attorney] say nothing to that," then "everybody was telling the truth."

¶ 13 Respondent's attorney inquired further about what respondent said. Petitioner stated her "attorneys advised [her] that they had spoken to [respondent] and that he had said something like 'Nothing up with it,' he gets offers every day or requests every day. So [her] attorneys

advised [her] that that was said." Petitioner indicated that she was not sure when this conversation took place and she was not there. Petitioner testified that she did not search any websites for any articles about BRF's possible acquisition of a division of Smuckers.

¶ 14    Based on this deposition testimony, respondent argued that petitioner's prior knowledge of the Smuckers deal showed that her section 2-1401 petition lacked due diligence, lacked a meritorious claim and lacked any fraudulent concealment by respondent. Respondent stated that there was no longer a genuine issue of material fact to sustain petitioner's section 2-1401 petition and asked for summary judgment.

¶ 15    In her response to the summary judgment motion, petitioner admitted to seeing an article dated December 1, 2004, from The Cincinnati Post, titled "Smucker to close Calf. Plant." The article stated, "Smucker said it wants to sell its Orrville industrial bakery ingredients business to Baldwin Richardson Foods Co., a privately owned food company in Chicago. Terms were not disclosed for the deal, which is expected to close by the end of the year." Petitioner contended that the article reported only that Smucker "wanted to sell" the division to BRF, but did not disclose a finalized deal. Petitioner maintained that she did not learn of a finalized deal until October 2006.

¶ 16    In October 2008, the trial court granted respondent's summary judgment motion. The court found that petitioner "cannot establish that she was diligent in presenting her claim in the original action or that the evidence supporting her claim could not have reasonably been discovered at the time of judgment." The court stated that it was "uncontroverted that [petitioner] learned of the possible acquisition no later than December 1, 2004, through the online edition of the *Cincinnati Post*" and shared this information with her attorneys. Despite learning of the possible acquisition, petitioner voluntarily entered into the MSA on December 22, 2004, based on a December 2003 valuation without an update or any additional discovery.

¶ 17    In October 2008, respondent filed a motion for sanctions pursuant to Rule 137, requesting sanctions against petitioner and seeking reasonable attorney fees and costs incurred in response to the section 2-1401 petition. The sanctions motion did not request sanctions to be imposed against petitioner's attorneys. Respondent asserted that petitioner made knowingly untrue allegations in her section 2-1401 petition, in depositions and other filings during the section 2-1401 proceedings that she did not learn of the Smuckers acquisition until October 2006. In a supplemental motion for sanctions, respondent sought attorney fees and an additional sanction of $75,000 from petitioner.

¶ 18    In December 2008, petitioner filed her response to respondent's motion for sanctions. In her response, petitioner admitted that in late 2004, she "heard a rumor about some deal" and later read that Smuckers wanted to enter into some transaction. But petitioner emphasized that respondent failed to disclose any information about a deal in discovery and respondent had told her that BRF was in financial distress. Petitioner maintained that respondent's acts or omissions alleged in the petition amounted to fraud. Respondent filed a reply to petitioner's response in January 2009 and contended that petitioner and her attorneys knew at the time they signed the section 2-1401 petition that contrary to the allegations in the petition, petitioner had prior knowledge of the possible Smuckers acquisition no later than

December 1, 2004, and that she had notified her attorneys. Despite this information, they failed to make a reasonable inquiry into the acquisition prior to petitioner signing the MSA and then filed a false petition to vacate the dissolution judgment.

¶ 19 In February 2009, following a hearing, the trial court entered a written order granting respondent's motion for sanctions. In the order, the court found petitioner and her attorneys, Meenan and Berman, were liable for respondent's reasonable attorney fees and costs incurred in litigating the section 2-1401 petition. Specifically, the trial court found as follows.

"Because she must establish her diligence Petitioner's case for 2-1401 relief turned on what she knew or should have known at the time she entered into the marital settlement agreement which was incorporated in the dissolution judgment. Framing the issue as one of Respondent's concealment and distinguishing between a possible and an actual acquisition do not change the fact that she falsely alleged and averred that prior to the later part of 2006 she had no knowledge or information as to the Smuckers 'deal.' Petitioner objectively knew or should have known that the allegations and averments in her 2-1401 petition and related filings as to the timing of her knowledge about the 'deal' were untrue. Because it is undisputed that in 2004 Petitioner conveyed the information she had to her attorneys they, too, knew or should have known of the falsehoods in Petitioner's 2-1401 petition and related filings. Thus, Respondent has shown that Petitioner's 2-1401 petition was not well-grounded in fact, Petitioner's untrue statements were made without reasonable cause and Rule 137 has been violated. This is not a case of objectively reasonable arguments for a position that the court found unpersuasive. The court would certainly have granted Respondent's Motion to Dismiss Petitioner's 2-1401 petition if the record at that time reflected the truth: that Petitioner and her attorneys knew about the Smuckers deal in 2004 before the entry of the dissolution judgment."

¶ 20 Following the sanction order, Berman and Meenan withdrew their appearances on behalf of petitioner. Beginning in February 2010, the trial court conducted an evidentiary hearing on the amount of reasonable attorney fees incurred by respondent. In August 2010, the trial court awarded respondent $112,000 in attorney fees based on the violation of Rule 137, to be paid $56,000 by petitioner and $56,000 by Berman and Meenan. Berman and Meenan each filed a notice of appeal and their appeals were consolidated.

¶ 21 This appeal followed.

¶ 22 On appeal, Berman and Meenan argue that the trial court erred in sanctioning them under Supreme Court Rule 137 because respondent never sought sanctions against the attorneys and they were never given notice that they could be liable for sanctions. Specifically, the attorneys contend that their constitutional procedural due process rights were "abridged" because the trial court sanctioned them without notice. Alternatively, the attorneys assert that the trial court abused its discretion in sanctioning them. The attorneys do not raise any issue on appeal regarding the trial court's determination of the amount of respondent's attorney fees and costs.

¶ 23 Initially, respondent contends that the attorneys have forfeited their claim because it was not raised in the trial court, we disagree. Respondent cites the decision in *Liddle v. Cepeda*, 251 Ill. App. 3d 892 (1993), in support of his forfeiture argument. However, the facts present

in *Liddle* are distinguishable from the present circumstances. In *Liddle*, the trial court entered a sanction order against a law firm for filing a third-party complaint without ever speaking to their client and having made no reasonable inquiry into the allegations. *Liddle*, 251 Ill. App. 3d at 894. On appeal, the law firm complained for the first time that the procedure under which they were sanctioned was error because the trial court called the hearing on its own volition and without advance notice. *Liddle*, 251 Ill. App. 3d at 895. The reviewing court found this issue forfeited because the attorneys participated in the hearing, never raised an objection, did not move for a continuance, and declined the trial court's invitation to have another attorney from their law firm testify. *Liddle*, 251 Ill. App. 3d at 895-96.

¶ 24     In contrast, here, the trial court conducted a hearing on respondent's motion for sanctions against petitioner, but did not give notice to Berman and Meenan that the court could find their actions sanctionable. The attorneys did not have the opportunity to raise an objection or otherwise contest the sanctions because the trial court issued its order and *sua sponte* sanctioned the attorneys. This issue concerning the lack of notice given to the attorneys could not have been raised before the trial court.

¶ 25     Respondent further argues that the attorneys could have raised the issue in the trial court by filing a posttrial motion before the sanctions amount was determined. However, respondent has not cited any authority holding that the filing of a motion to reconsider or other posttrial motion is a prerequisite to filing an appeal. Supreme Court Rule 341(h)(7) requires an appellant to include in its brief an "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008). Moreover, it is well settled that a contention that is supported by some argument but does not cite any authority does not satisfy the requirements of Supreme Court Rule 341(h)(7), and bare contentions that fail to cite any authority do not merit consideration on appeal. *Wasleff v. Dever*, 194 Ill. App. 3d 147, 155-56 (1990). Moreover, the reviewing court in *In re Michael H.*, 392 Ill. App. 3d 965, 970 (2009), noted that "there is no requirement that a litigant file a motion to reconsider before filing an appeal." See also *Cardona v. Del Granado*, 377 Ill. App. 3d 379, 385 (2007) (defendant was not required to file a motion for new trial or a judgment *n.o.v.* in order to challenge the court's order on appeal); *Winters v. Kline*, 344 Ill. App. 3d 919, 928 (2003) (finding that the defendants were not required to file a motion for a new trial). Additionally, section 2-1203(a) of the Code of Civil Procedure states that in all cases tried without a jury, a party *may* file a motion for a rehearing, retrial, modification of judgment, to vacate the judgment, or other relief. 735 ILCS 5/2-1203(a) (West 2008). Berman and Meenan were not obligated to challenge the trial court's sanction order before raising the issue on appeal. Accordingly, the issue has not been forfeited.

¶ 26     Supreme Court Rule 137 provides:

"The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. *** If a pleading, motion,

-7-

or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney fee." Ill. S. Ct. R. 137 (eff. Feb. 1, 1994).

¶ 27 "The purpose of Rule 137 is to prevent parties from abusing the judicial process by imposing sanctions on litigants who file vexatious and harassing actions based upon unsupported allegations of fact or law." *Dismuke v. Rand Cook Auto Sales, Inc.*, 378 Ill. App. 3d 214, 217 (2007). Since Rule 137 is penal in nature, it will be strictly construed. *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 487 (1998). "Courts should use an objective standard in determining what was reasonable under the circumstances as they existed at the time of filing." *Sanchez v. City of Chicago*, 352 Ill. App. 3d 1015, 1020 (2004). "An appellate court should base its review of the trial court's decision on three factors: (1) whether the court's ruling was an informed one; (2) whether the ruling was based on valid reasons which fit the case; and (3) whether the ruling followed logically from the stated reasons to the particular circumstances of the case." *Sanchez*, 352 Ill. App. 3d at 1020.

¶ 28 A trial court's decision imposing sanctions is entitled to deference and will not be reversed absent an abuse of discretion. *In re Estate of Baker*, 242 Ill. App. 3d 684, 687 (1993). "However, the predicate to such deference is that the trial court make an informed and reasoned decision." *Estate of Baker*, 242 Ill. App. 3d at 687 (citing *In re Estate of Smith*, 201 Ill. App. 3d 1005 (1990)); see also *Berg v. Mid-America Industrial, Inc.*, 293 Ill. App. 3d 731, 736-37 (1997). "[A] trial court's decision on sanctions must clearly set forth the factual basis for the result reached in order to be afforded deferential treatment." *Estate of Baker*, 242 Ill. App. 3d at 687-88. The court in *Estate of Baker* held that "a trial court must allow for an evidentiary hearing before imposing sanctions." *Estate of Baker*, 242 Ill. App. 3d at 688. A hearing would "give the parties involved an opportunity to present any evidence needed to substantiate or rebut the claim for sanctions, and an opportunity to argue their positions." *Estate of Baker*, 242 Ill. App. 3d at 687.

¶ 29 In *Estate of Baker*, the executrix of the estate filed the final report which included a payment of $8,000 in legal fees for the estate's attorney's work performed on behalf of the estate. At a hearing on objections to the final report, the attorney testified about the time spent on the case and filed a time log which listed a total fee of $9,869.40, based on 109.66 hours of work at $90 per hour. The trial court found this amount to be " 'ludicrous' " and " 'sanctionable,' " stating that he was entitled to an attorney fee of $2,500. *Estate of Baker*, 242 Ill. App. 3d at 687. The trial court then *sua sponte* sanctioned the attorney by reducing his fees to zero and awarding $2,500 to the opposing counsel to be paid by the estate. *Estate of Baker*, 242 Ill. App. 3d at 687. On appeal, the reviewing court reversed and remanded for an evidentiary hearing on the issue of sanctions pursuant to Rule 137, holding that "a trial court must allow for an evidentiary hearing before imposing sanctions." *Estate of Baker*, 242 Ill. App. 3d at 688.

¶ 30 The reviewing court in *Berg* held that the trial court erred when it entered a dismissal as a sanction under Rule 137. In that case, the plaintiff filed a complaint on behalf of himself and a corporation and the defense moved to dismiss the complaint as the plaintiff was not

an attorney. An attorney filed an appearance for the plaintiffs, but the defense moved to disqualify him. At a hearing on the disqualification motion, the trial court granted the defense motion and asked if there was a motion to dismiss, the defendant then moved to dismiss and the trial court granted the motion. *Berg*, 293 Ill. App. 3d at 732-33. The reviewing court noted that a trial court imposing a sanction under Rule 137 must make specific legal and factual findings and conduct a hearing to allow the parties to present evidence to support or rebut the claim, but none of this was done by the trial court. *Berg*, 293 Ill. App. 3d at 736-37. The appellate court found the trial court's order to be devoid of sufficient information and reversed. *Berg*, 293 Ill. App. 3d at 737.

¶ 31 In *Estate of Smith*, a claimant received a judgment against the estate following a jury verdict and sought attorney fees and costs from the estate as a sanction. The trial court denied the request, finding that the award was not warranted under the circumstances of the case, but the record indicated that no evidence had been presented at the hearing on the claimant's motion for fees and costs. *Estate of Smith*, 201 Ill. App. 3d at 1007. The reviewing court remanded for an evidentiary hearing on the claimant's motion, finding that the trial court erred in not conducting such a hearing. *Estate of Smith*, 201 Ill. App. 3d at 1009. The *Estate of Smith* court held "in order for the circuit court to fulfill the prerequisites for exercising its discretion, it must have an evidentiary hearing and it must make specific findings which will then form the basis for its ultimate decision." *Estate of Smith*, 201 Ill. App. 3d at 1010. The court noted that on remand the claimant was to be given an opportunity to prove the requirements for sanctions and the estate would be given the opportunity to rebut the contentions. *Estate of Smith*, 201 Ill. App. 3d at 1010.

¶ 32 The decision in *Riverdale Bank v. Papastratakos*, 266 Ill. App. 3d 31, 42 (1994*)*, was cited by defendant to show that a separate hearing is not necessary when the pleadings and evidence at trial establish that the allegations were made without reasonable cause and were untrue. In that case, two of the defendants filed motions for sanctions prior to trial. The bank filed a declaratory judgment action against multiple defendants raising several allegations stemming from a forgery, including a fraudulent conspiracy to defraud the bank, and sought to enjoin all of the defendants from receiving any money. One of the defendants, Sotirios Georgopoulos, the individual whose signature was forged, was granted summary judgment on the bank's complaint and filed a counterclaim for conversion against the bank. Prior to the trial on the conversion counterclaim, Georgopoulos filed a motion for sanctions. A second defendant, Nick Papastratakos, filed a motion to dismiss which was granted, and a motion for fees and costs. Neither the sanction nor the fee motion was ruled on before the trial. Following a trial on Georgopoulos' counterclaim, the trial court entered judgment in Georgopoulos' favor. Georgopoulos then filed a second motion for sanctions against the bank. The trial court issued an order imposing sanctions against the bank and awarding fees and costs to Georgopoulos and Papastratakos. *Riverdale Bank*, 266 Ill. App. 3d at 33-38.

¶ 33 On appeal, the bank argued that the trial court erred in failing to hold a separate hearing on the motions for sanctions, as required by Rule 137. The court pointed out that Papastratakos' sanction motion was filed prior to the effective date of Rule 137 and therefore was subject to section 2-611 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, ¶ 2-611), which governed the imposition of sanctions prior to Rule 137, while Georgopoulos

sought sanctions under both section 2-611 and Rule 137. The reviewing court noted that a hearing was not required under section 2-611 when "the pleadings and evidence at trial demonstrate that the offending allegations were made without reasonable cause and were untrue." *Riverdale Bank*, 266 Ill. App. 3d at 42. There, the court determined that a separate hearing was unnecessary because "assertions in the pleadings and the evidence at trial provided a sufficient basis for the court to determine that the statutory requirements for imposition of sanctions were met." *Riverdale Bank*, 266 Ill. App. 3d at 43. The court found that the bank had made unsupported factual and legal assertions in its complaint and it knew prior to the filing of the complaint that Georgopoulos' signature had been forged by another individual. *Riverdale Bank*, 266 Ill. App. 3d at 43.

¶ 34    *Riverdale Bank* is distinguishable from the instant case because in that case, the trial judge sitting as the finder of fact presided over a lengthy trial in which she heard testimony from several witnesses and other evidence relating to the forgery allegations before she even considered the sanctions motions. The trial evidence fully supported the imposition of sanctions and additional information was therefore not needed. Here, no trial was held and no evidence presented. We find the circumstances of this case to be similar to those present in *Baker* and *Berg*, where the trial court sanctioned an individual without a hearing and the opportunity to rebut those allegations. Additionally, the courts in *Baker* and *Berg* considered the more recent Rule 137 in considering the trial court's actions in imposing sanctions. We find this line of cases to be the more reasoned view in holding that a trial court may sanction a party or an attorney "upon its own initiative" but the individual subject to sanction is entitled to a hearing.

¶ 35    Here, the trial court *sua sponte* imposed sanctions against Berman and Meenan, or as Rule 137 states, "upon its own initiative." "*Sua sponte*" is defined in Black's Law Dictionary as "Without prompting or suggestion; on its own motion." Black's Law Dictionary 1437 (7th ed. 1999). We conclude that this definition and the language of Rule 137 do not mean that the trial court should act without a hearing. Rather, "*sua sponte*" or "upon its own initiative" means that the trial court has the ability to sanction an individual without a motion presented by a party.

¶ 36    In this case, the trial court conducted a hearing on respondent's motion for sanctions against petitioner. However, the trial court never informed Berman and Meenan that it considered their actions in the filing of the section 2-1401 petition to be sanctionable and the attorneys represented petitioner at the hearing and presented arguments on behalf of their client. While Rule 137 does allow for the trial court to impose sanctions "upon its own initiative," the opportunity for a person subject to sanctions to be heard is a different matter. The attorneys were not afforded such an opportunity. The evidence in the record contains very little information about what petitioner knew about the Smuckers deal and at what time and what petitioner said she told her attorneys. The record also only offers evidence of what petitioner said she told her attorneys, but there is nothing in the record to show what petitioner actually did tell her lawyers. Although the record contains information relating to what petitioner knew, the record discloses very little information about what the attorneys knew. The record is devoid of any testimony, deposition or evidence regarding the attorneys' own knowledge and actions. The attorneys did not have the opportunity to defend their

actions separate from the actions of their client. We point out that after the trial court issued its order sanctioning Berman and Meenan, the attorneys withdrew their representation of petitioner because of a clear conflict of interest.

¶ 37 We also note that the trial court held the attorneys and petitioner to a greater level of knowledge in its sanction order than in the prior summary judgment order. In the summary judgment order, the trial court found that it was "uncontroverted that [petitioner] learned of the possible acquisition no later than December 1, 2004." Then, in the sanction order, the trial court definitively stated that "Petitioner and her attorneys knew about the Smuckers deal in 2004 before the entry of the dissolution judgment." This difference is significant because the article petitioner read in Black Enterprise Magazine stated that the sale occurred in 2005, which was after the MSA was settled and the dissolution judgment was entered. The only information in the record regarding the Smuckers deal in 2004 concerned the possible acquisition by BRF. However, as we have found, the record in this case does not establish what Berman and Meenan knew or should have known. There remains a difference in what petitioner knew and what her attorneys knew. Petitioner was given the opportunity to be represented by counsel and to defend against respondent's claims for sanctions, but Berman and Meenan were not. Because Rule 137 must be strictly construed and is penal in nature, Berman and Meenan should have been afforded the opportunity to rebut the allegations at an evidentiary hearing.

¶ 38 While we make no finding as to whether Berman and Meenan's conduct was sanctionable, we hold that the trial court should have allowed the attorneys the opportunity to defend themselves before being sanctioned. We vacate the trial court's sanction order against Berman and Meenan and remand for an evidentiary hearing on whether sanctions are appropriate here. Since we have found that Berman and Meenan were entitled to a hearing before being sanctioned, we need not reach the merits of the sanction order or the attorneys' constitutional challenge to the same. The Illinois Supreme Court has "repeatedly cited the general principle that courts will address constitutional issues only as a last resort, relying whenever possible on nonconstitutional grounds to decide cases." *Mulay v. Mulay*, 225 Ill. 2d 601, 607 (2007). Finally, respondent's request for attorney fees and costs for this appeal is denied.

¶ 39 Based on the foregoing reasons, we vacate the decision of the circuit court of Cook County and remand for further proceedings consistent with this opinion.

¶ 40 Vacated and remanded.