# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Mohica v. Cvejin*, 2013 IL App (1st) 111695

---

| | |
|---|---|
| Appellate Court Caption | CAROL MOHICA, as Special Representative for Theodore Sarche, Plaintiff-Appellant, v. BILJANA CVEJIN, Defendant-Appellee and Cross-Appellant (Michael Sarche, Krasnow Saunders Cornblath, L.L.P, Carol Mohica, as Agent and Employee of Krasnow, Henry Krasnow, Praveen Kosuri, and Margaret Lavanish, Cross-Appellees). |
| District & No. | First District, Sixth Division<br>Docket No. 1-11-1695 |
| Filed | March 29, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action for the breach of a real estate contract where plaintiff seller died while the litigation was pending and plaintiff's attorneys' petition to appoint one of their paralegals as plaintiff's special representative pursuant to section 2-1008(b) of the Code of Civil Procedure was granted, the trial court's ultimate ruling that the petition was improperly granted was affirmed, since neither plaintiff's law firm nor the paralegal was a "party" entitled to participate in the deceased's estate for purposes of section 2-1008(b), but, in the absence of established precedent on the question of who must verify a petition seeking the appointment of a substitute representative pursuant to section 2-1008(b), the trial court's award of sanctions against plaintiff pursuant to Supreme Court Rule 137 was reversed. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 03-CH-18879; the Hon. Anthony L. Burrell, Judge, presiding. |
| Judgment | Reversed. |

Counsel on
Appeal

Krasnow Saunders Cornblath, LLP, of Chicago (Charles A. Valente, of counsel), for appellants.

Novoselsky Law Offices, of Chicago (David A. Novoselsky, of counsel), and Mark P. Standa, of Mark P. Standa, P.C., of Lake Forest, for appellee Biljana Cvejin.

Colby M. Green, of River Forest, for appellee Michael Sarche

Panel

PRESIDING JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Justice Hall concurred in the judgment and opinion.
Justice Gordon specially concurred, with opinion.

## OPINION

¶ 1        At issue in this case is the continued representation of a deceased man in a contract dispute against defendant, Biljana Cvejin. Prior to his death, Theodore Sarche (Theodore) filed a lawsuit against defendant for damages related to a real estate contract. Theodore died during the ensuing litigation. Plaintiff, Carol Mohica, subsequently was appointed special "administrator" pursuant to section 2-1008(b) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1008(b) (West 2004)) allowing the litigation to proceed in Theodore's absence. Following a bench trial before a new judge, judgment was entered in favor of defendant.

¶ 2        Defendant then filed a petition for attorney fees and an Illinois Supreme Court Rule 137 (eff. Feb. 1, 1994) motion for sanctions, arguing the section 2-1008(b) substitution motion was improperly granted by the initial judge. The second judge agreed and ordered Rule 137 sanctions against plaintiff, as an agent and employee of Krasnow Saunders Cornblath, L.L.P. (Krasnow law firm), in the form of attorney fees.

¶ 3        On appeal, plaintiff contends the circuit court erred in concluding the section 2-1008(b) substitution motion was improper and imposing sanctions based on that conclusion. In the alternative, plaintiff contends the circuit court abused its discretion in awarding Rule 137 sanctions without providing a hearing. On cross-appeal, defendant contends the circuit court erred in dismissing Dr. Michael Sarche (Michael), Theodore's son, from the case for lack of personal jurisdiction and erred in failing to hold the individual attorneys as well as the Krasnow law firm jointly and severally liable for the entire amount of defendant's attorney fees. Based on the following, we reverse the judgment of the circuit court.

¶ 4                                    FACTS
¶ 5        In 2003, Theodore and defendant entered into a contract for the purchase of Theodore's

condominium. The contract contained a provision providing for attorney fees to the "losing party" in the event of litigation. Defendant gave Theodore a $5,000 security deposit pursuant to the contract. Defendant intended to purchase the condominium as a rental property; therefore, when the condominium board amended its declarations during the pendency of the sale to prohibit renting in the building, defendant refused to close on the contract. On November 10, 2003, Theodore's attorney, Henry Krasnow (Henry) of the Krasnow law firm, filed a lawsuit for breach of contract on Theodore's behalf. Theodore mitigated his damages by selling his condominium for less than the contract price. Theodore amended his complaint to seek damages in the amount of $19,600, which was the difference between the sale price and defendant's contract price, plus the costs associated with owning the property from the scheduled closing date until the date the property actually sold, as well as attorney fees. Defendant filed a motion to dismiss on June 11, 2004. The motion was denied and defendant was ordered to file an answer to Theodore's amended complaint. On November 5, 2004, defendant filed an answer to the amended complaint and affirmative defenses.

¶ 6        On December 15, 2004, Theodore died. Theodore had one living child, Michael, who lived in Denver, Colorado. A probate estate was not opened in Theodore's name.

¶ 7        On December 16, 2004, Henry and Praveen Kosuri, an attorney at the Krasnow law firm, filed a third motion to default defendant for repeatedly failing to comply with the circuit court's orders and failing to appear for a deposition. Theodore was the named plaintiff on the pleading, which requested damages plus attorney fees. On December 28, 2004, the motion was denied, but Theodore and defendant were ordered to appear for depositions. On March 9, 2005, Kosuri filed a fourth amended motion to default defendant, requesting damages plus attorney fees. Again, Theodore remained the named plaintiff on the pleading, which alleged that "[Theodore] noticed the deposition of Defendant for January 20, 2005" and defendant sent a letter refusing to appear without providing alternate dates. The pleading further stated that "[t]o this date, [Theodore] has not received any response from Defendant or her attorneys."

¶ 8        Then, on March 11, 2005, Henry and Kosuri filed a motion pursuant to section 2-1008(b) of the Code to spread Theodore's death of record and to request the appointment of plaintiff as Theodore's special representative. Plaintiff was a paralegal at the Krasnow law firm. The section 2-1008(b) motion provided that Michael and his children were the "individuals who appear entitled to participate in [Theodore's] estate." The motion further provided that plaintiff was Theodore's "special representative and the liaison between his family and his attorneys in Chicago." Plaintiff verified the motion.

¶ 9        A hearing was held on March 21, 2005; however, no court reporter was present. The circuit court denied Theodore's fourth motion for default and granted the section 2-1008(b) motion appointing plaintiff as Theodore's "special administrator."[1] The circuit court's March 21, 2005, order additionally instructed that notice be given to Theodore's known heirs. On March 23, 2005, a certified letter was sent by Kosuri to Michael with copies of the section

---

[1]The order was originally written to reflect plaintiff as "Special Representative," but "Representative" was crossed out and renamed "Administrator."

2-1008(b) substitution motion and the order granting the motion.

¶ 10    The parties subsequently filed cross-motions for summary judgment, which were denied. However, prior to the filing of defendant's cross-motion for summary judgment, on April 7, 2006, plaintiff filed a motion for sanctions and to strike based on defendant's repeated failures to comply with court orders and for "dilatory tactics." The motion was entered and continued on April 20, 2006, with instructions that plaintiff "keep track of any time that is unnecessarily spent due to defendant's acts from this date forward" and that "attorneys fees for any such time shall be considered by the trial judge and are considered warranted by this Court."

¶ 11    A bench trial was ultimately held in September 2007 before a new judge. Prior to trial, defendant's newly retained counsel filed a motion *in limine* arguing, *inter alia*, that plaintiff did not have standing to litigate based on the representation of a deceased man. At the hearing on the motion, defendant argued that a positive verdict on her behalf would leave no party against whom to assert a petition for attorney fees. In response, plaintiff's attorney, Margaret Lavanish, from the Krasnow law firm, stated that "whoever is the plaintiff in this case has absolutely nothing to do with the defendant's liability." The court reserved its ruling on the issue of standing. On the next court date, the trial court said, "[w]ell, at this point, I'm going to let the previous judge's ruling as to the appointment stand." A bench trial then commenced. On September 28, 2007, the circuit court found in favor of defendant and ordered the return of her $5,000 earnest money plus interest. In the court's oral ruling, the judge stated that he would "review an affidavit of attorneys' fees." A written order was entered on November 14, 2007, indicating the same.

¶ 12    On October 5, 2007, defendant filed a petition for attorney fees requesting an award of $39,448.50 against the Krasnow law firm, or "the appropriate party."

¶ 13    A letter dated November 28, 2007, from defendant's attorney to Michael references a telephone conversation held that day. In the letter, defendant's attorney provided that, in the telephone conversation, Michael said that he was not represented by the Krasnow law firm in the underlying case; that no estate was ever opened for Theodore; that he did not know plaintiff; that plaintiff did not act as a liaison between his family and Theodore's attorneys; that he did not know plaintiff was appointed as special representative for the lawsuit; that he was surprised to learn more than the $5,000 earnest money was involved in the lawsuit, *i.e.*, attorney fees; and that he had never received a legal bill from the Krasnow law firm.

¶ 14    On December 3, 2007, defendant was granted leave to amend her fee petition, increasing her request to $57,915.75. Defendant's amended fee petition requested that fees be entered against Michael and plaintiff, individually and as an agent and employee of the Krasnow law firm, as well as Henry, Kosuri, and Lavanish. Defendant's motion further moved the court to bar the Krasnow law firm from further litigating the action where there was no party plaintiff as a result of Theodore's death.

¶ 15    Also on December 3, 2007, defendant filed a motion for Rule 137 sanctions, claiming the section 2-1008(b) motion violated Rule 137 where it was not properly verified by Theodore's heir, it did not request the appointment of Michael as special representative, and there was no proof that Theodore's heirs were provided notice of plaintiff's appointment.

Defendant requested damages in the form of attorney fees.

¶ 16    On December 13, 2007, plaintiff filed a motion to reconsider the circuit court's order finding in favor of defendant on the breach of contract claim. Defendant filed a response.

¶ 17    Following a hearing on January 28, 2008, a briefing schedule was entered on defendant's motion to bar the Krasnow law firm from further litigating the case and the parties were ordered to file briefs on the issue of "the [section] 2-1008(b) service with respect to Michael Sarche being served with process on the amended fee petition." On February 19, 2008, the Krasnow attorneys filed an *amicus* brief, arguing that, although the firm did not represent Michael, Michael was not a party to the case and not subject to the court's jurisdiction. On the same date, defendant filed a brief arguing that the Krasnow law firm litigated "substantive and procedural issues on behalf of [Michael] while at the same time challenging the jurisdiction" over him. Defendant averred that the court had jurisdiction over Michael as the only real party in interest where he should have been provided notice of the appointment of plaintiff in 2005.

¶ 18    Also on February 19, 2008, plaintiff responded to defendant's motion to bar the Krasnow law firm from further litigating the case. An affidavit by Michael was attached to the response, in which he attested that he was Theodore's only surviving child; that he did not open an estate for his father because of Theodore's "very limited assets" and there being no requirement in Colorado to open an estate or have letters of office issued; that he authorized the Krasnow law firm to continue the litigation against defendant upon Theodore's death; that he received notice in March 2005 of the order appointing plaintiff as special administrator; that he did not "keep abreast of the progress of [the] case because it was being handled by Henry Krasnow, who had been [his] close and valued friend for over 50 years and in whom [he had] absolute trust"; and that he never thought he was a party to the case, where Henry Krasnow represented Theodore's interests.

¶ 19    On May 1, 2008, defendant filed a supplement to her amended petition for attorney fees, increasing her request to $95,190.76.

¶ 20    On May 2, 2008, Michael's attorney filed an appearance on his behalf and moved to dismiss Michael from the case pursuant to section 2-301(a) of the Code (735 ILCS 5/2-301(a) (West 2004)) for lack of jurisdiction.

¶ 21    On June 6, 2008, the circuit court denied plaintiff's motion to reconsider its order finding in favor of defendant on the breach of contract claim.

¶ 22    The case was repeatedly continued for various reasons.

¶ 23    A hearing was held on March 12, 2010, on the petition for attorney fees, the Rule 137 motion for sanctions, and Michael's motion to dismiss. No testimony was presented, but the parties presented extensive arguments.

¶ 24    Ultimately, the circuit court granted Michael's motion to dismiss, finding Michael was never made a "proper party" to the case and, therefore, the court lacked jurisdiction. In addition, the circuit court ruled that the section 2-1008(b) motion violated Rule 137 because it was verified by plaintiff and did not seek to appoint Michael as special representative. In so finding, the court stated that the section 2-1008(b) motion was "improper" and "done for an improper purpose" where:

"the law firm wanted to continue the case rather than going through the procedures necessary to make sure that they had the proper party, *** Dr. Michael Sarche; that they decided they wanted to proceed and that they appointed an employee of the firm as special representative just for the purpose of continuing the case, but they did not follow the correct procedures in doing so. So there was a violation of Rule 137."

The court took the matter of determining the appropriate sanction under advisement, but found defendant was entitled to attorney fees from plaintiff as special representative. In addition, the circuit court denied defendant's motion to bar the Krasnow law firm from further litigation. A briefing schedule was set for defendant's final fee petition and suggested sanctions. A written order was entered on July 30, 2010, memorializing the court's findings, in which the court additionally provided that plaintiff violated section 2-1008(b) in the "filing" of the motion and that a sanction was appropriate.

¶ 25      On April 5, 2010, defendant filed her third amended petition for fees requesting $123,466.76.

¶ 26      On May 17, 2011, the circuit court granted defendant's Rule 137 motion for sanctions, awarding $114,470 against plaintiff "as agent and employee" of the Krasnow law firm. In so ruling, the circuit court said:

"Here there was a clear Rule 137 violation by the agents and employees of the law firm of Krasnow Saunders Cornblath, L.L.P. ('Krasnow') by the filing of a defective section 2-1008(b) Motion appointing Krasnow employee Carol Mohica, 'Special Representative' for the deceased plaintiff, Dr. Theodore Sarche. This court finds that Ms. Mohica acted at the direction of Krasnow and its attorneys and further, that all of the extensive subsequent litigation and the costs borne by the Defendants is the direct result of this violation. This court finds that if the rules of Civil Procedure had been followed, either the case would have ended with the Plaintiff[']s death (as required by *Clay v. Huntley*, 338 Ill. App. 3d 68 (*** 1980) and a slew of other cases holding that the attorney's representation of a deceased client terminates with the client's death), or the law firm could have proceeded by getting a bona fide 'Special Representative' (such as Dr. Michael Sarche) to authorize Krasnow to continue the litigation. Krasnow did neither and this court is hard-pressed to believe that this was done unknowingly given the quality of representation Krasnow is known for and the fact that there was evidence that the Krasnow firm had knowledge of and may have been in contact with the deceased Plaintiff's living heir.

Krasnow through its own actions has created a situation where they attempted to enjoy all of the potential benefits of continuing the litigation (a favorable ruling for Plaintiff and the payment of Plaintiff law firm's attorney's [*sic*] fees) and none of the risks (the payment of a victorious Defendant's attorney's [*sic*] fees). Additionally, Krasnow's actions similarly passed the same unfair advantage to the surviving heir who surely would have benefitted had the Plaintiff been victorious and now stands insulated from any liability in the instant matter. This court believes it would be the height of injustice to allow Krasnow to benefit from an uncollectible award of sanctions directed at Carol Mohica when she was acting at the behest and as an agent of the Krasnow firm.

Therefore this Court clarifies its ruling of March 12, 2012 that the sanctions award is to be directed against Special Representative Carol Mohica, as agent and employee of Krasnow Saunders Cornblath LLP." (Emphasis omitted.)

¶ 27 This timely appeal followed.

¶ 28                                      DECISION
¶ 29                           I. Section 2-1008(b) Motion

¶ 30 Plaintiff contends the section 2-1008(b) motion was proper and the second judge erred in finding otherwise.

¶ 31 Section 2-1008(b) provides:

"If a party to an action dies and the action is one which survives, the proper party or parties may be substituted by order of court upon motion as follows:

(1) If no petition for letters of office for the decedent's estate has been filed, the court may appoint a special representative for the deceased for the purpose of prosecuting the action. The appointment shall be on verified motion of any party who appears entitled to participate in the deceased's estate, reciting the names and last known addresses of all known heirs and the legatees and executor named in any will that has been filed. The court's determination that a person appears entitled to participate in the deceased's estate shall be solely for purposes of this Section and not determinative of rights in final disposition. Within 90 days after appointment, the special representative shall notify the heirs and legatees of the following information by mail: that an appointment has been made, the court in which the case was filed, the caption of the case, and a description of the nature of the case. The special representative shall publish notice to unknown heirs and legatees as provided in the Probate Act of 1975. *** The proceeds of any judgment or settlement shall be distributed under the provisions of the Probate Act of 1975." 735 ILCS 5/2-1008(b) (West 2004).

¶ 32 The language of the statute uses the permissive "may," in that the court "may appoint a special representative"; thus, a court has discretion whether to grant a substitute appointment. See *Senese v. Climatemp, Inc.*, 289 Ill. App. 3d 570, 583 (1997). When this court reviews a motion under section 2-1008(b), "the overriding consideration on appeal is whether substantial justice is being done between the litigants and whether it was reasonable, under the circumstances, to compel the other party to proceed on the merits." *Id*. In other words, a reviewing court must determine whether the circuit court abused its discretion. *Id*.

¶ 33 The section 2-1008(b) motion for substitution of plaintiff was originally granted on March 21, 2005. However, following a hearing on March 12, 2010, a second judge found that the section 2-1008(b) motion for substitution was improperly granted by the prior judge in 2005. The transcript of that hearing demonstrates the circuit court concluded that the section 2-1008(b) motion was improperly verified by plaintiff when the motion should have been filed by Michael as Theodore's living heir.

¶ 34 The section 2-1008(b) motion was titled "Motion to Spread Death of Record and To Appoint a Special Representative" and provided:

"Plaintiff Theodore Sarche, by his undersigned counsel, pursuant to 735 ILCS 5/2-1008, moves this Court to spread the death of Plaintiff of record and appoint Carol Mohica as Mr. Sarche's Special Representative. In support thereof, Plaintiff states as follows:

1. Theodore Sarche filed his Amended Complaint on March 9, 2004.

2. Mr. Sarche died on December 15, 2004. ***

3. Mr. Sarche's lawsuit against Defendant is currently still pending before the Court.

4. No petition for letters of office for Mr. Sarche's estate has been filed.

5. Carol Mohica is Mr. Sarche's special representative and the liaison between his family and his attorneys in Chicago.

6. The individuals who appear to be entitled to participate in Mr. Sarche's estate are:

Michael Sarche and his children

3257 S. Leyden Street

Denver, CO 80222."

The signature block of the motion contained the names Henry Krasnow and Praveen Kosuri.

¶ 35    Plaintiff argues that the statute at issue did not impose any restrictions on who could file a verified motion for substitution. Defendant responds that the motion had to be verified by *a party* and, because the Krasnow law firm could not represent a deceased man, only Michael was an eligible party. The parties maintain, and our research reveals, that there are no cases analyzing the statutory language at issue. To our knowledge, therefore, this is an issue of first impression.

¶ 36    Although the circuit court had discretion to grant or deny the motion for substitution, the language of the statute further provides that "[t]he appointment *shall* be on verified motion of any party who appears entitled to participate in the deceased's estate, reciting the names and last known addresses of all known heirs and the legatees and executor named in any will that has been filed." (Emphasis added.) 735 ILCS 5/2-1008(b) (West 2004). The use of "shall" indicates mandatory language. *Senese*, 289 Ill. App. 3d at 583. Whether the section 2-1008(b) motion before us complied with the mandatory language is a question of statutory interpretation, which we review *de novo*. *Knauerhaze v. Nelson*, 361 Ill. App. 3d 538, 563-64 (2005). When we interpret a statute, the primary goal is to ascertain and give effect to the intent of the legislature by reading the language of the statute as a whole, while applying its plain and ordinary meaning. *Id*. at 564.

¶ 37    Applying its plain and ordinary meaning, we find the disputed language, *i.e.*, "the appointment shall be on verified motion of *any party* who appears entitled to participate in the deceased's estate" (emphasis added), requires that the movant, namely, the individual providing the verified motion, be "a party" as the term has been defined, and not merely any individual. See *People v. Smith*, 236 Ill. 2d 162, 167 (2010) ("if a term has a settled legal meaning, the courts will normally infer that the legislature intended to incorporate the established meaning"). Black's Law Dictionary defines "party" as "[o]ne who takes part in a transaction" or "one by or against whom a lawsuit is brought." Black's Law Dictionary 1231-32 (9th ed. 2009). We presume that if the legislature had intended that *any* individual

-8-

be allowed to request, upon verified motion, the substitution of a special representative, it would have used language other than "party." See *Knauerhaze*, 361 Ill. App. 3d at 564. For example, unlike the general statute governing the verification of pleadings, the legislature expressly stated in section 2-1008 that the motion shall be verified by *any party*. *Cf.* 735 ILCS 5/2-605(a) (West 2004) ("[a]ny pleading *** may be verified by the oath of the party filing it *or of any other person or persons having knowledge of the facts pleaded*" (emphasis added)). " 'Different results are presumed to be intended when the legislature uses certain words in one instance and different words in another.' " *Chicago SMSA Ltd. Partnership v. Illinois Department of Revenue*, 306 Ill. App. 3d 977, 983 (1999) (quoting *Yiadom v. Kiley*, 204 Ill. App. 3d 418, 430 (1990)). The legislature chose language requiring the appointment be on verified motion of *any party*, not merely *any individual*. We must presume the legislature intended the settled legal meaning of the word "party" to define who may verify a substitution motion.

¶ 38       We find support in the introduction of the statute, where a plain reading of the language demonstrates that the legislature used "party" in a defined manner when stating: "[i]f a party to an action dies and the action is one which survives, the *proper party* or *parties* may be substituted by order of court upon motion as follows." (Emphases added.) 735 ILCS 5/2-1008(b) (West 2004). We find further support in the statutory language requiring that the verified motion recite "the names and last known addresses of all known heirs and the legatees and executor named in any will that has been filed." 735 ILCS 5/2-1008(b) (West 2004).

¶ 39       Reading the statute as a whole, the plain language demonstrates the legislature's intent that a movant in a section 2-1008(b) substitution motion include heirs, legatees, and the executor to any will essentially as a fail-safe to ensure a substitution is made by an interested party. Moreover, the public policy of ensuring that an interested *party* verify the motion requesting a substitute appointment is supported by the additional statutory language requiring that, "[w]ithin 90 days after appointment, the special representative shall notify the heirs and legatees of the following information by mail: that an appointment has been made, the court in which the case was filed, the caption of the case, and a description of the nature of the case. The special representative shall publish notice to unknown heirs and legatees as provided in the Probate Act of 1975." 735 ILCS 5/2-1008(b) (West 2004). Accordingly, the legislature provided measures to ensure all interested parties were made aware of the substitution, as their rights could be affected by the appointment.

¶ 40       We, therefore, find that, pursuant to the plain language of the statute, a party moving, by verified motion, for the appointment of a special representative must be one involved in the underlying transaction or lawsuit at issue, or an heir, legatee, or executor of a will. We emphasize that our finding is limited to the party verifying the motion requesting the appointment, and not to the actual special representative. We make no findings regarding the qualifications, if any, of the individual serving as the special representative.

¶ 41       We next consider whether plaintiff's section 2-1008(b) substitution motion complied with the requirements of the statute. As stated, the motion filed by Henry and Kosuri and verified by plaintiff provided that plaintiff was Theodore's "special representative and liaison between his family and his attorneys in Chicago" and requested her appointment as special

representative. However, in general, "the relationship of attorney and client is terminated by the death of the client, and thereafter, the authority of the attorney to represent the interests of a deceased client must come from the personal representatives of the decedent." *Clay*, 338 Ill. App. 3d at 76; *In re Marriage of Fredricksen*, 159 Ill. App. 3d 743, 745 (1987). As a result, the Krasnow law firm had no authority to represent Theodore without authorization by Theodore's personal representative. The section 2-1008(b) motion seemingly asserted that plaintiff had the authority to represent Theodore, yet plaintiff was a paralegal at the Krasnow law firm with no connection to the real estate contract between Theodore and defendant, with no connection to the lawsuit between Theodore and defendant, and was not an heir, legatee, or executor of a will. Plaintiff's counsel conceded at the March 12, 2010, hearing on, *inter alia*, the Rule 137 motion for sanctions that plaintiff was "not a party."

¶ 42       The record reveals that Theodore's only living son, Michael, was contacted by the Krasnow law firm at some point unclear from the record. In his affidavit, Michael stated that he authorized the Krasnow firm to "take those steps they deemed advisable and necessary under Illinois law to continue pursuing the claim" against defendant. However, according to the language of the statute, Michael was required to file the verified motion as the "party who appears entitled to participate in the estate." In fact, the section 2-1008(b) motion listed "the individuals who appear to be entitled to participate in [Theodore's] estate are Michael Sarche and his children." We emphasize, again, that we make no judgment on the choice of plaintiff as a special representative; rather, our decision is limited to the facts of this case under which Michael was required to file the verified motion requesting plaintiff's appointment. It was improper for plaintiff to verify the motion requesting her own appointment.

¶ 43       Based on the foregoing, we conclude that the circuit court initially erred on March 21, 2005, in granting the section 2-1008(b) motion for substitution where neither the Krasnow law firm nor plaintiff was a party entitled to participate in Theodore's estate. As a result, we conclude the circuit court properly ruled on March 12, 2010, that the section 2-1008(b) petition was granted in error.

¶ 44                                    II. Rule 137 Sanctions

¶ 45       Because we have found the section 2-1008(b) substitution motion was granted in error, we consider whether the circuit court properly awarded Rule 137 sanctions against plaintiff in the form of attorney fees.

¶ 46       Rule 137 provides:

"Every pleading, motion and other paper of a party represented by an attorney shall be signed by at least one attorney of record ***. *** The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. *** If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the

person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney fee." Ill. S. Ct. R. 137 (eff. Feb. 1, 1994).

¶ 47 Rule 137 is penal in nature and, therefore, must be strictly construed. *Dismuke v. Rand Cook Auto Sales, Inc.*, 378 Ill. App. 3d 214, 217 (2007). "The party seeking to have sanctions imposed by the court must demonstrate that the opposing litigant made untrue and false allegations without reasonable cause." *Id*. A circuit court's decision whether to grant Rule 137 sanctions must be informed, based on valid reasons, and follow logically from the circumstances of the case. *Id*. (citing *Burrows v. Pick*, 306 Ill. App. 3d 1048, 1051 (1999)). It is within the circuit court's discretion whether to grant a Rule 137 request for sanctions, and we will not disturb the court's decision absent an abuse of that discretion. *Id*. "However, this deferential standard does not prevent a reviewing court from independently reviewing the record and finding an abuse of discretion where the facts warrant." *Polsky v. BDO Seidman*, 293 Ill. App. 3d 414, 427 (1997).

¶ 48 Plaintiff contends the circuit court erred in granting defendant's Rule 137 request for sanctions where the section 2-1008(b) motion was well grounded in fact and law. Specifically, plaintiff contends that the circuit court did not identify any factual inaccuracies in the motion and the Krasnow attorney that signed the motion, Kosuri, based it on an objectively reasonable interpretation of the statute where the statute fails to identify any requisite criteria for the individual verifying the motion. Plaintiff argues that, even if her interpretation of the statute was incorrect, her position was not frivolous or unreasonable so as to render it sanctionable, especially where the circuit court originally granted the section 2-1008(b) substitution. In response, defendant contends the section 2-1008(b) motion was not well grounded in fact or law and was improperly filed by the Krasnow law firm on behalf of the deceased and not as Michael's attorneys, thereby attempting to shield Michael from any liability for the underlying lawsuit.

¶ 49 The circuit court determined that Rule 137 sanctions were appropriate where "Krasnow through its own actions *** created a situation where they attempted to enjoy all of the potential benefits of continuing the litigation (a favorable ruling for Plaintiff and the payment of Plaintiff law firm's attorney's [*sic*] fees) and none of the risks (the payment of a victorious Defendant's attorney's [*sic*] fees). Additionally, Krasnow's actions similarly passed the same unfair advantage to the surviving heir who surely would have benefitted had the Plaintiff been victorious and now stands insulated from any liability in the instant matter." Accordingly, the circuit court issued sanctions against plaintiff, as an agent and employee of the Krasnow law firm, for gamesmanship played in the filing of the section 2-1008(b) motion.

¶ 50 As stated, we apply an abuse of discretion standard to questions regarding the issuance of Rule 137 sanctions. However, unlike in the case before us, the deferential standard is applied because generally the conduct at issue occurred before the judge issuing the sanctions, who, therefore, is in the best position to determine whether the challenged conduct warranted penal sanctions or because the trial court heard testimony from individuals involved in the challenged conduct. See *U.S. Bank v. YMCA of Metropolitan Chicago*, 409

Ill. App. 3d 548, 555 (2008). In this case, the second judge neither observed the conduct underlying the sanctions, namely, the filing of the improper section 2-1008(b) motion, nor heard live testimony related to the challenged filing. Rather, the second judge issued Rule 137 sanctions based on arguments by the parties' attorneys and affidavits related to the improper filing. No evidentiary hearing was held on the matter. Accordingly, based on the facts and circumstances before us, we question the applicability of the abuse of discretion standard. Nevertheless, we conclude Rule 137 sanctions were not appropriate even under an abuse of discretion standard.

¶ 51    A court may impose Rule 137 sanctions when a party asserts a legal proposition contrary to established precedent. *Polsky*, 293 Ill. App. 3d at 427. However, a court "should not impose sanctions on a party who presents objectively reasonable arguments for his position, regardless of whether the arguments are deemed to be unpersuasive or incorrect." *Id*. at 428. As we have stated, there is no established precedent on the issue of who must verify a motion seeking to appoint a substitute representative. Accordingly, plaintiff did not assert sanctionable arguments contrary to established precedent. See *Barrett v. Fonorow*, 343 Ill. App. 3d 1184, 1199-1200 (2003). Moreover, because there was no law in existence, we cannot say defendant "made untrue and false allegations without reasonable cause." *Dismuke*, 378 Ill. App. 3d at 217; see *In re Marriage of Johnson*, 2011 IL App (1st) 102826, ¶ 27. We, therefore, reverse the Rule 137 sanctions imposed against plaintiff. As a result, we need not address whether those sanctions were excessive.

¶ 52                                    III. Cross-Appeal

¶ 53    On cross-appeal, defendant contends the circuit court erred by refusing to award the full amount of attorney fees requested in her third amended petition. In her brief, defendant provides that if she "can obtain full compensation from the Krasnow attorneys fully satisfying her contractual entitlement to attorneys [*sic*] fees and costs as the prevailing party, she will not seek to enforce any claim against" Michael. In the event she is not fully compensated through sanctions against plaintiff, defendant argues that she should be able to obtain the attorney fees she is entitled to under the real estate contract as the prevailing party. Defendant further contends the circuit court erred in determining that Michael was not subject to the jurisdiction of the court, effectively negating her argument that Michael is liable under the contract for her attorney fees.

¶ 54    After finding in favor of defendant in the underlying contract dispute in September 2007, the circuit court instructed defendant to file a petition for attorney fees to be considered by the court. Defendant initially filed a fee petition against the Krasnow law firm or "the appropriate party," but amended the petition in December 2007, requesting that fees be entered against plaintiff, Michael, and individual Krasnow attorneys. On the same date that she filed her amended fee petition, defendant also filed her motion for Rule 137 sanctions. At the time of Theodore's death in December 2004, defendant's attorney fees totaled $900. Defendant's initial fee petition in October 2007 requested $39,448.50 in attorney fees, while her amended fee petition filed two months later requested $57,915.75. Litigation on defendant's subsequent petition for Rule 137 sanctions began in December 2007 and did not

conclude until May 2011. In her final fee petition filed on April 5, 2010, defendant requested $123,466.76 in attorney fees. The circuit court's ultimate Rule 137 sanction award was for $114, 470.[2]

¶ 55    Because we have found that the trial court impermissibly awarded Rule 137 sanctions, we need not address defendant's request that the individual Krasnow attorneys, along with the Krasnow law, firm be jointly and severally liable for their violations of Rule 137. Furthermore, we decline defendant's request to impose Illinois Supreme Court Rule 375(a) (eff. Feb. 1, 1994) sanctions against the Krasnow attorneys and the law firm. However, because our finding is such that defendant will not be compensated by the Krasnow attorneys for any attorney fees, we turn to defendant's argument that Michael became the party in interest and availed himself of the jurisdiction of the court by authorizing the Krasnow law firm to continue Theodore's lawsuit.

¶ 56    On December 3, 2007, defendant named Michael in her amended petition for attorney fees. According to Michael's brief,[3] on January 20, 2008, he received the pleading along with a "notice of service" signed by defendant's counsel. The "notice of service" was not notarized and was not filed with the trial court nor was a summons issued by the clerk of the court. On May 2, 2008, Michael's counsel filed a section 2-301(a) motion to dismiss for lack of jurisdiction, which the trial court granted.

¶ 57    Section 2-301(a) of the Code provides:

"Prior to the filing of any other pleading or motion other than a motion for an extension of time to answer or otherwise appear, a party may object to the court's jurisdiction over the party's person, either on the ground that the party is not amenable to process of a court of this State or on the ground of insufficiency of process or insufficiency of service of process, by filing a motion to dismiss the entire proceeding or any cause of action involved in the proceeding or by filing a motion to quash service of process." 735 ILCS 5/2-301(a) (West 2004).

An objection to jurisdiction raises questions of law, which we review *de novo*. *Burns v. Department of Employment Security*, 342 Ill. App. 3d 780, 786 (2003).

¶ 58    When an action is brought against a new party "[s]ervice of process shall be had upon a new party in like manner as is provided for service on a defendant." 735 ILCS 5/2-406(c) (West 2004). Pursuant to Illinois Supreme Court Rule 101, "summons shall be issued under the seal of the court, tested in the name of the clerk, and signed with his name. It shall be dated on the date it is issued, shall be directed to each defendant, and shall bear the address and telephone number of the plaintiff or his attorney ***." Ill. S. Ct. R. 101(a) (eff. Feb. 1, 1996).

---

[2]The amount awarded as Rule 137 sanctions was discounted in conjunction with the amount defendant paid to her original attorney, who represented her from 2003 until September 2007 where those fees were challenged by plaintiff as failing to establish a sufficient foundation for reasonableness.

[3]We are unable to confirm the date of receipt with the record.

¶ 59 We conclude that Michael was properly dismissed from the lawsuit. As previously stated, Michael *should have* been the party who filed the verified motion requesting the appointment of a representative, yet he failed to do so. Instead, the first pleading filed in the trial court on behalf of Michael was on May 2, 2008, when Michael's attorney filed a motion to dismiss for lack of jurisdiction. Michael's affidavit, which bears no date, was filed in conjunction with plaintiff's response to defendant's motion to bar the Krasnow law firm from further litigating the case on February 19, 2008, and not as a pleading on behalf of Michael. In the affidavit, Michael attested that, at some point in time after Theodore died, he authorized the Krasnow law firm to pursue Theodore's lawsuit and that, in March 2005, he received a certified letter containing the order appointing a special representative. Notably, in his affidavit, Michael attested that he "never thought that [he] was a party to this case" such that he viewed Henry Krasnow as representing Theodore's interests and not his own. When and to what extent Michael communicated with the Krasnow law firm regarding the continuation of Theodore's lawsuit does not make Michael a party to the contract dispute.

¶ 60 In sum, Michael was not a substitute party and was not served with the appropriate summons where defendant's attorney's "notice of service" failed to comply with the dictates of Supreme Court Rule 101. Moreover, Michael did not waive his objection to improper service pursuant to section 2-301(a-5) of the Code. See 735 ILCS 5/2-301(a-5) (West 2004) ("[i]f the objecting party files a *responsive pleading or motion* *** prior to the filing of a motion in compliance with subsection (a), that party waives all objections to the court's jurisdiction over the party's person" (emphasis added)).

¶ 61 Furthermore, Michael is not liable under Theodore's contract. Defendant cited three cases in support of her argument that contracts do not abate upon the death of a party and heirs remain liable for the contracts. It is true that, "[g]enerally, a contract survives the death of a party thereto except where the contract requires the continued existence of a particular person or thing for its performance" (*In re Estate of Braun*, 222 Ill. App. 3d 178, 187 (1991)); however, as demonstrated by the cases cited by defendant, the performance of the remaining contract is left to the estate of the deceased party. *Id.*; *Muka v. Estate of Muka*, 164 Ill. App. 3d 223, 228 (1987); *Parkway Bank & Trust Co. v. LeVine*, 45 Ill. App. 3d 497, 499 (1977) (where the estate was substituted as defendant and became liable under the contract). In the case before us, any attorney fees to which defendant was entitled as the prevailing party under the contract should have been satisfied by Theodore's estate. No estate was ever opened for Theodore and there is no legally cognizable argument that an estate was required under these circumstances; therefore, there is no party against whom defendant may assert the obligations of the contract. We are unaware of, and defendant has not cited, any case law holding that an heir may become liable for a contract of his decedent simply by relation. Rather, it has long been established that "[a]n heir at common law is not liable for the debts of his ancestor." *Landau v. Landau*, 409 Ill. 556, 562 (1951).

¶ 62 In conclusion, we find Michael was properly dismissed from the contract dispute for lack of jurisdiction and, even assuming, *arguendo*, that jurisdiction was established, defendant could not recover the contractual attorney fees from Michael.

-14-

¶ 63                                   CONCLUSION

¶ 64        We reverse the judgment of the trial court in awarding Rule 137 sanctions.

¶ 65        Reversed.

¶ 66        JUSTICE GORDON, specially concurring.

¶ 67        I concur with the majority's holding that the Rule 137 sanctions imposed in this case should be reversed. However, I must write separately because the majority reaches out to comment on other issues that are not properly before us, namely, the propriety of the first judge's original ruling.

¶ 68                              I. Rule 137 Sanctions

¶ 69        I agree that we must reverse the Rule 137 sanctions.

¶ 70        In the case at bar, first, plaintiff moved to be appointed as a special representative pursuant to section 2-1008(b) of the Code of Civil Procedure (735 ILCS 5/2-1008(b) (West 2010)), and the trial judge granted it. The case then proceeded to a bench trial in front of a different judge.

¶ 71        Next, defendant moved before the new judge, shortly before trial, claiming that plaintiff did not have standing to litigate because the first judge erred in making her appointment. Although the second judge decided to hold the motion in reserve, he allowed a full bench trial to go forward.

¶ 72        After the bench trial in which the second judge found in favor of defendant, the second judge granted defendant's motion for Rule 137 sanctions. The second judge stated orally that he granted the sanctions on the grounds: (1) that the section 2-1008(b) motion was verified only by plaintiff, a paralegal in the Krasnow law firm, and (2) that the motion did not seek to appoint Michael, the deceased son, as a representative.

¶ 73        However, both these facts were before the first judge when the decision was granted to allow the plaintiff's appointment as a special representative. Neither fact constituted new information. Even when defense counsel was arguing before the second judge about standing, he admitted that the problems that he was now raising with respect to the original motion were apparent "on the face of the motion." If one was keeping a score card for plaintiff's motion, it would be 1 to 1: one ruling in favor, and one ruling against–based on the same issue and the same facts. I cannot affirm sanctions where reasonable minds can, and did, differ. *Dismuke v. Band Cook Auto Sales, Inc.*, 378 Ill. App. 3d 214, 216 (2007) (courts generally give parties "the 'benefit of the doubt' on having misinterpreted the law" rather than impose Rule 137 sanctions). Thus, I concur with the majority's holding that we must reverse the Rule 137 sanctions.

¶ 74                        II. First Order Not on Appeal Before Us

¶ 75        Another reason for reversing the sanctions is that they were imposed for obtaining an

order that still stands and that order is not on appeal before us. Although the second trial judge issued sanctions based on his determination that the first judge erred in issuing the original appointment order, the second judge refused to reverse the appointment order, observing "what you're arguing is that the [first] judge was wrong, and you're asking me to sit here as an appellate court, and I can't do that." However, the appointment order was not listed in the notice of appeal or in a cross-notice of appeal, and none of the parties on appeal asks us to reverse it. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994) (notice of appeal is jurisdictional). Defendant did file a notice of cross-appeal but chose not to list the appointment order in the notice. Defendant listed two orders: the July 30, 2011, order in which the second judge found that plaintiff violated Rule 137; and the final May 17, 2011, order in which he determined the amount of the Rule 137 sanction. Thus, although defendant decided to file her own notice of cross-appeal, she chose not to list the first judge's appointment order in her notice.

¶ 76       Since the majority chooses to comment on the propriety of the first order, I must write separately. When an appellate court reaches out to comment on an issue that is completely unnecessary to its ultimate holding in the case, and which is not otherwise properly on appeal before us, that decision is mere *obiter dictum* and is not binding authority. *Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 266, 277 (2009) (*obiter dictum* is "generally not binding authority"). As our supreme court has explained, when comments by a court are " 'unnecessary to the outcome' " and " 'can be sloughed off without damaging the analytical structure of the opinion,' " those comments are mere *obiter dictum* and without binding authority. *Exelon*, 234 Ill. 2d at 277 (quoting *United States v. Crawley*, 837 F.2d 291, 292 (7th Cir. 1988)). In the case at bar, there was no reason for the majority to find that the trial court's first order was improper, when it then goes on to reverse the sanctions. One could have argued that such a ruling might have been necessary to an *opposite* holding–to affirming the sanctions–but it is completely unnecessary to the holding the majority reaches–reversing the sanctions. As a result, that whole section can be "sloughed off" without affecting the opinion and is thus *obiter dictum.*

¶ 77                                    III. Standard of Review

¶ 78       I also must write separately to clarify our standard of review. Normally, our standard of review for a Rule 137 sanction order is abuse of discretion. *In re Marriage of Johnson*, 2011 IL App (1st) 102826, ¶ 28. However, we utilize this deferential standard, in part, because the conduct at issue occurred before the trial judge, who is then in the best position to determine whether the conduct warranted penal sanctions or because the trial court heard testimony from the people involved in the conduct. *U.S. Bank v. YMCA of Metropolitan Chicago*, 409 Ill. App. 3d 548, 555 (2008) (the highly deferential, abuse of discretion standard is applied where the trial judge was "in the unique position of being able to observe the witnesses and how they testified, as well as all the other circumstances relating to their credibility"). See also *In re Marriage of Johnson*, 2011 IL App (1st) 102826, ¶ 27 ("Rule 137 is penal in nature" (citing *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 487 (1998))). However, in the case at bar, the action which triggered the sanctions–the filing of the motion for appointment–was not heard by the judge who issued the sanctions. As the second judge accurately observed, defendant was asking him to "sit here as an appellate court," reviewing

a cold record. Although the second judge heard argument by counsel concerning sanctions, he heard no testimony.[4] As a result, I believe that, on the unusual facts and circumstances of this case, our standard of review should be *de novo*.

¶ 79 Although the majority states that it "question[s] the applicability of the abuse of discretion standard," it nonetheless proceeds to decide the case under that standard. *Supra* ¶ 50. I must respectfully differ.

¶ 80                                    IV. Insufficient Record

¶ 81 Even if I wanted to find that the first judge's ruling was improper, as the majority has done, we lack the record to do it. *Wackrow v. Niemi*, 231 Ill. 2d 418, 428 n.4 (2008) (in the absence of a sufficient record on appeal, "a reviewing court will presume that the order entered by the trial court was in conformity with the law and had a sufficient factual basis"). Although it is the appellant's burden to provide us with a sufficient record to be able to grant the relief that the appellant requests on the claims that the appellant raises (*Chicago Province of the Society of Jesus v. Clark & Dickens, L.L.C.*, 383 Ill. App. 3d 435, 443 (2008)), it is also the appellee's burden to supplement the record if anything is missing that is needed to support its own claims (*People v. Vernón*, 396 Ill. App. 3d 145, 151 (2009)). It is the appellee in the case at bar, not the appellant, who is claiming that the grant of the appointment motion was unreasonable; thus, it is the appellee's burden to provide us with a complete record concerning the grant of that motion. Ill. S. Ct. R. 328 (eff. Feb. 1, 1994) (permitting an appellee to request the preparation of a supporting record on its claims, prior to the filing of the record on appeal); Ill. S. Ct. R. 329 (eff. Jan. 1, 2006) (permitting an appellee to supplement the record, even after it has been filed).

¶ 82 There is no evidence in the record before us that defendant objected to the initial grant of plaintiff's motion. The record contains no response by defendant to plaintiff's motion, and there is also no bystander's report that details either what defendant stated in response or what facts or precedent led the trial court to grant the motion. Ill. S. Ct. R. 323(c) (eff. Dec. 13, 2005) (describing the procedure for preparing a bystander's report if no verbatim report is available). There is a brief and self-serving claim made by defense counsel in front of the second judge that the original motion was granted "over the defense counsel's objections at the time"; however, plaintiff's counsel immediately pointed out to the second judge that neither he nor the present defense counsel was present at that original hearing. Later, defense counsel claimed to have an affidavit from the prior defense attorney who had been at the original hearing and who allegedly stated that he had objected at the time. Although defense counsel informed the court in March 2010 that he had had this affidavit in his possession "for about four years now," he never made it a part of the trial record and, thus, it is not part of the appellate record before us now.

¶ 83 Since we do not know what statements defendant did or did not make that may have led

_____

[4]During argument on the sanction motion before the trial court on March 12, 2010, plaintiff's attorney stated that, although he wanted to present documentary "materials," he did not want "an evidentiary hearing" or the opportunity to call witnesses.

to the trial court's grant of the motion, we lack the record to determine that the grant of the motion was improper.

¶ 84                                          V. Waiver

¶ 85    In addition to the facts that this issue is not on appeal before us and that we lack the record to decide it, there is yet a third reason why we should not decide the propriety of the first order. Defendant waived the issue of whether plaintiff could act as a special representative by failing to object to the motion at the time the first judge granted it. A party cannot stand idly by and not object, and then appeal, arguing that the trial court's action was wrong. *People v. Piatkowski*, 225 Ill. 2d 551, 564 (2007) (the purpose of the waiver rule is to encourage a party "to raise issues before the trial court, thereby allowing the court to correct its errors"). As we observed above, defendant chose not to file a response to the motion, chose not to file a bystander's report that would have detailed any oral objections that he made at the hearing, and chose not to file a motion to reconsider before the first judge. Thus, defendant waived the issue below of whether plaintiff could act as a special representative. In addition, there is no order indicating that the second trial judge ever ruled on defendant's motion objecting to plaintiff's standing. It is a movant's burden to make sure that a trial court rules on its motion, or the issue is waived. *Rodriguez v. Illinois Prisoner Review Board*, 376 Ill. App. 3d 429, 433 (2007) (a party's failure to obtain a ruling from the trial court on its motion results in an abandonment of the motion and "create[s] a procedural default of any issue related to that motion for the purpose[s] of appeal"). Thus, defendant waived this issue, twice. By filing a motion for sanctions, defendant gained, in essence, a third bite at the same apple.

¶ 86                                        VI. Conclusion

¶ 87    In sum, I must write separately because, first and most importantly, I cannot concur in finding that the first judge's order was improper. Second, defendant failed to provide us with a sufficient record that would allow us to reach such a conclusion. Third, defendant waived this issue, twice, in the court below. For these three reasons, I concur that we must reverse the Rule 137 sanctions, but I must write separately. In addition, I write separately to note that, under the unusual circumstances of this case, our standard of review should be *de novo*, rather than abuse of discretion.

¶ 88    Rule 137 sanctions carry a stigma for a lawyer and his firm which is not warranted in this case. *In re Marriage of Johnson*, 2011 IL App (1st) 102826, ¶ 27 ("Rule 137 is penal in nature" (citing *Dowd & Dowd*, 181 Ill. 2d at 487)). I agree that we should reverse the Rule 137 sanctions and thus remove the stigma. Since the trial court awarded attorney fees to defendant in the form of a Rule 137 sanction and since the trial court may have ruled differently on the other issues before it if Rule 137 had not been available as a means to provide those attorney fees, I would reverse the trial court's July 30, 2011, and May 17, 2011, orders in their entirety and remand for further proceedings in this case. I take no position at this time on the propriety of awarding attorney fees as provided for in the original real estate contract or the propriety of dismissing Michael from the suit.

¶ 89       As a final housekeeping matter, I concur with the majority's decision not to impose sanctions pursuant to Illinois Supreme Court Rule 375(a) (eff. Feb. 1, 1994) against the Krasnow law firm and its attorneys.