2020 IL App (1st) 171452-U

THIRD DIVISION
September 30, 2020

No. 1-17-1452

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 94 CR 27214 |
| | ) | |
| WENDELL HUDSON a/k/a WILLIAM HILL, | ) | Honorable |
| | ) | Joseph M. Claps, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Howse and Justice Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court's denial of defendant's postconviction petition after an evidentiary hearing was not manifestly erroneous where appellate counsel was not ineffective for failing to raise a nonmeritorious claim that standby counsel interfered with defendant's right to self-representation.

¶ 2    Defendant Wendell Hudson a/k/a William Hill appeals the trial court's denial of his postconviction petition following a third stage evidentiary hearing. On appeal, defendant argues that the trial court's denial was manifestly erroneous because he made a substantial showing that his appellate counsel was ineffective for failing to assert that his standby trial counsel interfered with his right to self-representation.

¶ 3     In October 1994, defendant was arrested after he and two codefendants were observed committing a burglary of a Venture store, located at 4443 South Pulaski Road in Chicago, by an off-duty police officer working as a security guard. Defendant then fled the scene in a truck that had been reported stolen and was pursued by the off-duty officer. Defendant crashed into a pole at a Chicago Housing Authority (CHA) property and the CHA security guard apprehended him.

¶ 4     At a February 1995 hearing, defendant filed a *pro se* motion for appointment of counsel other than the public defender's officer. The court denied defendant's request, stating "The public defenders are full time for that express purpose. You wish to have your own counsel you may do so, or if you wish to represent yourself, you may do so." Defendant then stated that he wished to "exercise" his sixth amendment right to represent himself. The court advised defendant that he could make that decision between that date and March 30, and warned that the charges were serious where jail could be involved. Defendant asked what the charges were, and the State responded that the case involved possession of a stolen motor vehicle and burglary. The court then admonished him that if he had two or more Class 2 prior convictions, the minimum sentence would be 6 years with a maximum of 30 years, and depending on the circumstances the sentence could be enhanced to up to 60 years, as well as an additional three years of mandatory supervised release (MSR). The case was then continued to March 30, 1995.

¶ 5     At the subsequent status hearing on March 30, 1995, defendant's counsel informed the trial court that defendant had told her that he wished to represent himself. Defendant again informed the court that he had a motion for appointment of counsel other than the public defender's office. He stated that he had a "conflict of interest with the Public Defender's Office because of the fact that [he] had filed ineffective assistance of counsel on three different public defenders" and he did not feel that he could be represented properly by the public defender's

2

office. The court again advised defendant that his two choices were to represent himself or obtain his own private counsel and denied defendant's motion. Defendant then stated that he had a *pro se* motion to quash his arrest and suppress evidence. Defendant informed the court that he would be representing himself. The case was continued to the next court date.

¶ 6     At the May 1995 hearing, defendant again reiterated that he wished to represent himself on his motion to quash arrest and suppress evidence. Defendant asked if it was possible to have his former public defender act as co-counsel. The court asked former defense counsel to sit in on the motion and to "serve as an advisor" for defendant. The codefendants' attorneys then presented opening statements on their respective motions to quash arrest. When it was defendant's turn for an opening statement, the standby counsel stated,

> "Mr. Hill has asked me to make an opening statement on his behalf. I have advised him that I don't believe the particular motion lies which is being argued by him. He is now discussing that with me. He and I have discussed this at length over the last few months."

¶ 7     The court then told defendant that he was welcome to make opening remarks or he could adopt the opening remarks of the other attorneys. Defendant stated that he wanted to adopt their remarks. The parties then proceeded on the motion. The standby counsel did not participate in the remainder of the hearing. Defendant called two witnesses for the motion and engaged in direct and redirect examination. He also cross-examined the State's witness. The motion hearing was continued to a later date.

¶ 8     When the motion hearing continued in August 1995, the standby counsel, acting as standby counsel, stated that she had subpoenaed all of defendant's witnesses and spoke with a witness to confirm availability for that day. Defendant then called and questioned one witness.

The motion was again continued. At a later status date in October 1995, the trial court stated that the prior standby counsel had been moved to another courtroom and a new public defender was appointed to act as standby counsel for defendant. Defendant presented additional witnesses at subsequent hearing dates for his motion to quash arrest. In December 1995, the trial court denied defendant's motion.

¶ 9    In May 1996, prior to the start of the jury trial, the trial court admonished defendant about the charges against him, the possible penalties if he was found guilty, and his right to choose a jury or bench trial. Defendant stated that he wanted a jury trial. The trial court recommended that defendant have an attorney represent him at trial, but defendant responded that he would represent himself "under protest" because of a conflict of interest between defendant and the public defender's office. Standby counsel indicated that she sent out subpoenas for defendant's requested witnesses. After the jury was seated, the parties gave opening statements. In his opening statement, defendant stated that at approximately 10:15 p.m. on October 25, 1994, he was "present over two miles away from the Venture Store. [He] was no where [*sic*] near the alleged stolen truck that was taken by force." Defendant was "taken by force from the back of his home to this truck and charged with possession of the truck and then burglary to the Venture Store."

¶ 10    The following is a summary of evidence presented at defendant's 1996 jury trial taken from another panel of this court's decision on defendant's direct appeal.

> "Briefly stated, on October 25, 1994, Chicago police officer William
> [Kazupski] was working while off-duty as a security guard for Venture. About 10
> p.m., he noticed that a white truck was parked on the street along the parking lot
> fence, the fence had been cut and a door on one of the Venture storage trailers

was open. He saw defendant inside of the trailer handing merchandise to codefendants [Elijah] Rockett and Ricky Johnson who were standing outside. He announced his office and told the defendants to 'freeze,' but they ran. As Officer [Kazupski] ran to his car, defendant returned to the white truck and drove away. A chase ensued until defendant's truck struck a pole and stopped. Defendant then ran on foot toward some row houses. He was eventually apprehended by a security guard for the row houses.

After police officers arrived at the scene, Officer [Kazupski] returned to the Venture parking lot where he inspected the trailer and found that the lock had been broken. Officer [Kazupski] later verified that the merchandise in the white truck driven by defendant belonged to Venture, that defendant was neither an agent nor employee of the store and that defendant had no authority to remove merchandise from the trailer. It was also subsequently determined that the white truck had been stolen from a business several days prior to the incident." *People v. Hill*, No. 1-96-2817 (1998) (unpublished order under Supreme Court Rule 23).

¶ 11　Prior to the start of the second day of the trial, the trial court asked defendant about his witnesses. Standby counsel stated that three witnesses were present under subpoena, but were not feeling very well. After the State rested its case and the jury was excused, standby counsel moved for a directed verdict on defendant's behalf, which the trial court denied. At that point, a discussion took place between the court and the parties regarding defense witnesses after defendant had released his witnesses for the day. Standby counsel stated:

"I had interviewed the witnesses. I explained to [defendant] I did not think they would help him in this case and, in fact, I think from what they told me

5

happened that they would hurt [defendant's] case. And that the only time they

could testify would be today. It was his decision of whether he was going to

release them or not, and I asked him what his decision was."

¶ 12    Defendant explained that he wanted the case continued to give him the opportunity to

have his alibi witnesses back in court. He stated they had to leave to pick up children from

school and had thought the case would be over earlier in the day. Standby counsel then stated:

"Your Honor, again to make it clear so [defendant] understands, when I

talked to the witnesses they said [defendant] was not in the house. First time they

saw him was after he was in custody. In fact, Ms. Dodson said when she saw

[defendant] he was running past her house. I don't -- they did not indicate any

kind of alibi defense at that time."

¶ 13    The prosecutor objected to the introduction of an alibi defense because it was the first

time it had been raised since opening statements and prior discovery did not list an affirmative

defense.

¶ 14    Defendant complained that he felt the court and the State were being "fundamentally

unfair" to him and not allowing him to "put on some kind of defense." The trial court declined to

continue the case. Following this discussion, defendant indicated that he did not want to testify

on his own behalf and the case was continued to a third day for closing arguments. Prior to

closing arguments, defendant informed the court that his witnesses were present and he wanted

to put them on the stand. He stated the witnesses would testify regarding where defendant was

arrested, time of arrest, the exact locations, and the officers involved. The prosecutor observed

that there was no dispute in where defendant was arrested and the officers involved. The trial

court denied defendant's request to call the witnesses. Following arguments, the jury found

defendant guilty of burglary and possession of a stolen motor vehicle. The trial court subsequently sentenced defendant to concurrent terms of 16 years in the Department of Corrections. Defendant was required to be sentenced as a Class X offender based on his numerous prior convictions, including multiple convictions for burglary and theft.

¶ 15    On direct appeal, defendant argued that (1) he was denied his sixth amendment right to counsel at his sentencing hearing and (2) his sentences were excessive. *Hill*, No. 1-96-2817, at 1. (1998) (unpublished order under Supreme Court Rule 23). The reviewing court observed that defendant failed to raise either issue in his posttrial motion and were forfeited, but the court found that forfeiture aside, the claims lacked merit. *Id*. at 3.

¶ 16    Regarding the right to counsel, the court observed that "defendant voluntarily, knowingly and intelligently waived his right to counsel" and was properly admonished prior to waiving his right to counsel. *Id*. at 4. The court concluded that defendant's right to counsel was not violated because when asked by the trial court the reason he needed counsel, defendant expressed a need for counsel to correct his presentence investigation report, which was then corrected. No other request for appointment of counsel was made by defendant. *Id*. at 5. Additionally, the reviewing court found "no basis" for defendant's claim of an excessive sentence. The court found no abuse of discretion by the trial court because defendant was required to be sentenced as a Class X offender based on his extensive criminal history and the sentences imposed were within the statutory ranges for each offense. *Id*. at 6.

¶ 17    In November 1997, defendant filed his initial *pro se* postconviction petition and alleged that his constitutional rights were violated under the fourth, fifth, sixth, and fourteenth amendments to the United States Constitution. The trial court summarily dismissed the petition in January 1998. In December 1998, the appellate court affirmed the dismissal and granted the

7

appellate counsel's motion to withdraw under *Pennsylvania v. Finley*, 481 U.S. 551 (1987). *People v. Hill*, No. 1-98-0465 (1998) (unpublished order under Supreme Court Rule 23). In July 2005, defendant filed a *pro se* petition for *habeas corpus*, alleging that he was denied his right to due process because of a violation of *Brady v. Maryland*. 373 U.S. 83 (1963). The attorney general contested jurisdiction because the prison warden was not served. The trial court agreed and dismissed the petition without prejudice. On appeal, the appellate court concluded that it lacked jurisdiction to consider the dismissal of the petition and, accordingly, it dismissed the appeal and granted appellate counsel's motion to withdraw as counsel pursuant to *Finley*. *People v. Hill*, No. 1-06-3357 (2007) (unpublished order under Supreme Court Rule 23.)

¶ 18    In September 2011, defendant filed his *pro se* motion for leave to file a successive postconviction petition. In his successive petition, defendant alleged that (1) his appellate counsel on direct appeal was ineffective; (2) the trial judge "abused his discretion and authority;" (3) an officer's name was "forged" on the arrest report; (4) the prosecution "knowingly used and solicited perjury testimony [*sic*] from its witnesses during trial;" (5) the trial judge "never questioned [defendant] about the legal rules of proceedings, his knowledge of persenting [*sic*] evidence, his level of education (6th grade), and when an [*sic*] when not to object;" (6) his right to confront witnesses was violated because his witnesses were not allowed to testify; (7) standby counsel "did not try in any way to help [defendant] through the trial.;" and (8) he was denied his request for appointment of counsel at sentencing. In October 2011, the trial court granted defendant leave to file his successive postconviction petition. Postconviction counsel was appointed in June 2012.

¶ 19    In July 2013, defendant, through counsel, filed his amended successive postconviction petition. The amended petition alleged only that defendant was denied effective assistance of

appellate counsel on direct appeal for failing to raise two claims: (1) defendant's waiver of counsel was not knowing and intelligent because the role of standby counsel was never properly defined by the trial court; and (2) standby counsel's actions interfered with defendant's right to self-representation by undermining his motion to quash arrest and suppress evidence. In May 2014, the State filed a motion to dismiss defendant's amended successive postconviction petition. Following briefing and arguments, the trial court denied the motion to dismiss in February 2015 and advanced the petition for a third stage evidentiary hearing. The trial court denied the State's motion to reconsider in March 2015.

¶ 20    In October 2015, the parties proceeded by stipulation at the evidentiary hearing. The evidentiary hearing in this case was considered simultaneously with defendant's separate postconviction petition evidentiary hearing in an unrelated prior conviction. Defendant presented a copy of his record on appeal from his prior proceedings and a copy of *People v. English*, 2013 IL 112890. The parties presented a stipulation from defendant's first standby counsel from pretrial proceedings. If called to testify, counsel would state that she did not (1) instruct defendant on "how to proceed at any time during the proceedings;" (2) make any decisions on defendant's behalf, nor did she argue or present any issue on his behalf; (3) cross-examine any witness on his behalf, nor did she object or argue any objections; (4) make any opening statements or closing arguments on defendant's behalf; and (5) tell defendant that she would act as his attorney while defendant was proceeding *pro se*. The stipulation further stated that "other than the defendant's request to have [standby counsel] present an opening statement at the motion to quash and suppress hearing and participate in jury selection, there is no evidence in the record that the defendant requested [standby counsel] to act on his behalf in any other matters." However, while defendant stipulated that standby counsel would provide that testimony if called

to testify, he contested the relevancy of the testimony. The State moved for a directed finding, which the trial court denied. The State submitted an affidavit from defendant's public defender assigned to the appeal and a report of proceedings from the arguments on the State's motion to dismiss as well as a copy of the State's motion to dismiss. The affidavit from appellate counsel and the State's motion to dismiss are not included in the record on appeal. The parties rested, but reserved argument until after the trial court reviewed the exhibits.

¶ 21    At the next court date in December 2015, defense counsel renewed his objection to the stipulation from standby counsel, arguing it was irrelevant because the issue in the petition was the ineffectiveness of appellate counsel and "any testimony from trial counsel that's outside the record would not be relevant." The prosecutor agreed and withdrew the stipulation.

¶ 22    Defense counsel then argued that the affidavit from appellate counsel showed "a level of bias" against defendant based on counsel describing defendant as "very difficult to deal with, overly demanding, unrealistic." Defense counsel argued that the appellate counsel stated defendant had filed a complaint against him with the Attorney Registration and Disciplinary Commission (ARDC) and that also demonstrated bias against defendant. Defense counsel further argued that the trial court could find the credibility of appellate counsel to be "questionable" because after reviewing the record, he maintained that there was no issue that had any chance of success on appeal. Defense counsel asserted this was contrary to the trial court's findings in the postconviction proceedings. Defendant then stood on his petition and memorandum.

¶ 23    The prosecutor argued that the record contradicted defendant's argument that his waiver of counsel was "not voluntary." The prosecutor further argued that while defendant complains that the trial court failed to define the role of standby counsel, defendant showed "nothing in support of that at any point, except for one thing." The prosecutor contended that the standby

counsel was appointed the day the motion to suppress was before the court and she stated that

"we discussed it at length, the motion to quash the arrest is frivolous and I'm not doing it for you

because I'm an advisor. She never did anything on his behalf except advise him that his motion

was frivolous." The prosecutor also argued that the allegation that the waiver was not voluntary

was *res judicata* because the appellate court found that "the issue arose about his initial

appointment, his initial request to go *pro se* was voluntarily, knowingly and intelligently made."

The prosecutor concluded that standby counsel "never infringed on [defendant's] right to

proceed *pro se*. Only evidence is that she respected it and protected it." The prosecutor also

maintained that the appellate counsel "was in no way prejudiced or biased against the

defendant," noting that in addition to the appeal, counsel filed a petition for rehearing and a

petition for leave to appeal to the supreme court.

¶ 24     In May 2016, the trial court entered a written order denying defendant's successive

postconviction petition and found that appellate counsel's decision not to raise the issues did not

amount to deficient performance which prejudiced defendant's appeal. In the order, the court

found that defendant "was aware of the nature of the charge against him, the consequences he

faced, and the right to counsel that he was abandoning." The court found defendant's claims that

the court "did not clearly define his role or standby counsel's role" were "effectively refuted by

the State." Regarding defendant's claim that appellate counsel failed to raise to the issue of

standby counsel's interference with defendant's ability to represent himself, the court observed

that defendant's argument was limited to standby counsel's statement in court that she declined

to make an opening statement on defendant's motion to quash arrest. The court found that "[a]ny

assumption that standby counsel would make the opening statement would have been somewhat

baseless given that counsel had discussed his motion's lack of merit in the months preceding the

hearing."

"Further, it does not follow that because standby counsel did not make the opening statement that petitioner was entirely, precluded from making the opening statement. If petitioner's counsel had given the opening statement, she would have exceeded her role of advisor as designated by the court."

¶ 25    The trial court further reasoned.

"[Defendant] has not herein alleged or established that standby counsel prevented him from accomplishing something he intended to accomplish or would have been able to accomplish if standby counsel had not prevented him from doing so either through unreasonable advice or direct action. Indeed, such a showing is necessary to establish that any actual interference occurred. Thus, it cannot be said that standby counsel's refusal to make the opening statement or the comments she made in so doing amount to an interference with his 6th amendment right to self-representation.

[Defendant] provides no other examples, of his expectation that he could turn to counsel for assistance beyond that of an advisor, other than the instance where standby counsel declined to make an opening statement on his motion. As noted above, [defendant's] misunderstanding was corrected at that point. The record does not reflect a later instance during trial wherein [defendant] relied on standby counsel for assistance and was denied. The lack of later instances of such reliance on being assisted is likely due to the fact that he had no such expectation after he was corrected at the outset. Although this court agrees that counsel's statement that [defendant's] motion 'did not lie' may have been extraneous and

somewhat unsupportive of [defendant's] position, it cannot be said that counsel's

conduct constituted interference or that counsel interfered with his right to self-

representation throughout the proceedings."

¶ 26    Defendant filed a motion to reconsider in May 2016, which the trial court denied in

February 2017.

¶ 27    This appeal followed.

¶ 28    The Illinois Post-Conviction Hearing Act (Post-Conviction Act) (725 ILCS 5/122-1

through 122-8 (West 2016)) provides a tool by which those under criminal sentence in this state

can assert that their convictions were the result of a substantial denial of their rights under the

United States Constitution or the Illinois Constitution or both. 725 ILCS 5/122-1(a) (West 2016);

*People v. Coleman*, 183 Ill. 2d 366, 378-79 (1998). Postconviction relief is limited to

constitutional deprivations that occurred at the original trial. *Id*. at 380. "A proceeding brought

under the [Post-Conviction Act] is not an appeal of a defendant's underlying judgment. Rather, it

is a collateral attack on the judgment." *People v. Evans*, 186 Ill. 2d 83, 89 (1999). "The purpose

of [a postconviction] proceeding is to allow inquiry into constitutional issues relating to the

conviction or sentence that were not, and could not have been, determined on direct appeal."

*People v. Barrow*, 195 Ill. 2d 506, 519 (2001). Thus, *res judicata* bars consideration of issues

that were raised and decided on direct appeal, and issues that could have been presented on direct

appeal, but were not, are considered forfeited. *People v. Blair*, 215 Ill. 2d 427, 443-47 (2005).

¶ 29    At the first stage, the circuit court must independently review the postconviction petition

within 90 days of its filing and determine whether "the petition is frivolous or is patently without

merit." 725 ILCS 5/122-2.1(a)(2) (West 2016). If the circuit court does not dismiss the

postconviction petition as frivolous or patently without merit, then the petition advances to the

second stage. Counsel is appointed to represent the defendant, if necessary (725 ILCS 5/122-4 (West 2016)), and the State is allowed to file responsive pleadings (725 ILCS 5/122-5 (West 2016)). At this stage, the circuit court must determine whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. See *Coleman*, 183 Ill. 2d at 381. If no such showing is made, the petition is dismissed. If, however, a substantial showing of a constitutional violation is set forth, then the petition is advanced to the third stage, where the circuit court conducts an evidentiary hearing. 725 ILCS 5/122-6 (West 2016).

¶ 30     At an evidentiary hearing, "the circuit court serves as the fact finder, and, therefore, it is the court's function to determine witness credibility, decide the weight to be given testimony and evidence, and resolve any evidentiary conflicts." *People v. Domagala*, 2013 IL 113688, ¶ 34. "At an evidentiary hearing, the burden is on the defendant to make a substantial showing of a deprivation of constitutional rights***." *People v. Coleman*, 206 Ill. 2d 261, 277 (2002). Since the trial court makes factual and credibility determinations, the court's decision will not be reversed unless it is manifestly erroneous. *People v. English*, 2013 IL 112890, ¶ 23. " 'Manifest error' is error which is clearly plain, evident, and indisputable." *People v. Taylor*, 237 Ill. 2d 356, 373 (2010). "Thus, a decision is manifestly erroneous when the opposite conclusion is clearly evident." *People v. Coleman*, 2013 IL 113307, ¶ 98. "The burden of convincing a reviewing court that a trial court's decision was manifestly erroneous is a heavy one." *People v. Jones*, 2012 IL App (1st) 093180, ¶ 49.

¶ 31     As observed above, the record on appeal does not contain the affidavit from defendant's appellate counsel or the State's motion to dismiss defendant's successive petition. Both items were offered by the State at defendant's evidentiary hearing. Defendant, as the appellant, bears

14

the burden of providing a sufficiently complete record to support its claims of error. *People v. Smith*, 406 Ill. App. 3d 879, 886 (2010); see also *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Any doubt arising from the incompleteness of the record will be construed against defendant. *Id.*

¶ 32      On appeal, defendant argues that the trial court erred in denying his successive postconviction petition because he made a substantial showing of ineffective assistance of appellate counsel for failing to raise a claim on direct appeal that his standby counsel interfered with his right to self-representation. Defendant has not challenged his claim that appellate counsel was ineffective for not asserting his waiver of counsel was not knowing and voluntary on appeal and has therefore forfeited that claim. *People v. Munson*, 206 Ill. 2d 104, 113 (2002) (concluding that the petitioner abandoned several postconviction claims by failing to raise them on appeal).

¶ 33      In the underlying claim, defendant contends that his right to self-representation was interfered with prior to and during trial by both of his standby counsels and "these interferences substantially affected his ability to make tactical decisions and present his defense." As the State points out, defendant asserts for the first time on appeal that his standby counsel during trial interfered with his right to self-representation in her statement to the court that "she did not believe the three witnesses that [defendant] wished to put on the stand would be beneficial to him because it undermined his ability to present his defense."

¶ 34      Illinois courts have consistently held that a claim not raised in the postconviction petition cannot be raised for the first time on appeal. *Pendleton*, 223 Ill. 2d at 475; *People v. Jones*, 213 Ill. 2d 498, 505 (2004). Section 122-2 of the Post-Conviction Act specifically provides that "the petition shall *** clearly set forth the respect in which petitioner's constitutional rights were

violated," and, section 122-3 provides that "[a]ny claim of substantial denial of constitutional rights not raised in the original or amended petition is waived" (725 ILCS 5/122-2 (West 2016); 725 ILCS 5/122-3 (West 2016)). While our supreme court may relax the forfeiture rule by invoking its supervisory power, this court "is not free, *** to excuse, in the context of postconviction proceedings, an appellate waiver caused by the failure of a defendant to include issues in his or her postconviction petition." *Jones*, 213 Ill. 2d at 508.

¶ 35     In his reply brief, defendant concedes that he did not "specifically point to [trial standby counsel's] remarks for his interference of standby counsel claim in his petition, but his allegations alleged interference by 'standby counsel.' " According to defendant, trial standby counsel's actions were "encompassed within his allegation against standby counsel." Defendant relies on *People v. Townsend*, 2020 IL App (1st) 171024, to support his claim that the argument has not been forfeited. However, defendant's reliance on *Townsend* is misplaced.

¶ 36     In that case, the reviewing court was reviewing the first-stage summary dismissal of the defendant's *pro se* postconviction petition whereas this case is on appeal following an evidentiary hearing. Given the different stage of proceedings, the burden on the defendant in *Townsend* was significantly lower where the defendant needed to only present the gist of a constitutional claim. There, the defendant raised a claim of ineffective assistance of his first attorney for usurping the defendant's right to waive a jury trial in his petition, but a second attorney ultimately stated the defendant's decision to have a jury trial. *Id.* ¶ 38. The reviewing court considered whether the defendant's petition set forth an arguable claim of ineffective assistance of counsel despite failing to reference the second attorney. *Id.* The petition alleged that the defendant's first attorney was ineffective for not allowing the defendant to have a bench trial. *Id.* ¶ 43. The reviewing court concluded that the defendant's petition set forth "an arguable claim

that his first attorney told him he did not have the choice to waive a jury trial and the circuit court was to take this allegation as true." *Id.*

¶ 37    Here, we are not reviewing whether defendant set forth an arguable claim of interference by standby counsel following a summary dismissal. Rather, defendant's petition was amended by an appointed attorney and an evidentiary hearing was conducted. This new claim of interference by the trial standby counsel was never raised in the amended petition and no evidence or argument regarding this claim was presented at the evidentiary hearing. Moreover, the supreme court has "stressed the importance of applying the forfeiture rule uniformly except in compelling situations because failure to raise a claim properly denies the trial court an opportunity to correct an error or grant a new trial, thus wasting time and judicial resources." *People v. Thompson*, 238 Ill. 2d 598, 612 (2010). Because defendant never raised this claim in the trial court, the court was not allowed the opportunity to consider whether defendant's claim had merit and no evidence or argument was presented at the evidentiary hearing. Defendant has not argued that this case presents a compelling reason to relax the forfeiture rule. Since this issue was not raised in his postconviction petition, defendant's claim of interference by his trial standby counsel has been forfeited and cannot be asserted for the first time on appeal.

¶ 38    Defendant's only claim before this court is whether his appellate counsel was ineffective for failing to raise the interference of defendant's initial standby counsel on direct appeal. Claims of ineffective assistance of counsel are resolved under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Ineffective assistance of appellate counsel claims are also subject to *Strickland*. *English*, 2013 IL 112890, ¶ 33. In *Strickland*, the Supreme Court delineated a two-part test to use when evaluating whether a defendant was denied the effective assistance of counsel in violation of the sixth amendment. Under *Strickland*, a defendant must

demonstrate that counsel's performance was deficient and that such deficient performance substantially prejudiced defendant. *Strickland*, 466 U.S. at 687. To demonstrate performance deficiency, a defendant must establish that counsel's performance fell below an objective standard of reasonableness. *People v. Edwards*, 195 Ill. 2d 142, 163 (2001). "A defendant is entitled to reasonable, not perfect, representation, and mistakes in strategy or in judgment do not, of themselves, render the representation incompetent." *People v. Fuller*, 205 Ill. 2d 308, 331 (2002). "Counsel's strategic choices are virtually unchallengeable. Thus, the fact that another attorney might have pursued a different strategy, or that the strategy chosen by counsel has ultimately proved unsuccessful, does not establish a denial of the effective assistance of counsel." *Id*.

¶ 39    In evaluating sufficient prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. If a case may be disposed of on the ground of lack of sufficient prejudice, that course should be taken, and the court need not ever consider the quality of the attorney's performance. *Strickland*, 466 U.S. at 697. "*Strickland* requires actual prejudice be shown, not mere speculation as to prejudice." *People v. Bew*, 228 Ill. 2d 122, 135 (2008).

¶ 40    A defendant who claims that appellate counsel was ineffective for failing to raise an issue on appeal must allege facts demonstrating such failure was objectively unreasonable and that counsel's decision prejudiced defendant. *People v. Rogers*, 197 Ill. 2d 216, 223 (2001). Appellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence of counsel to refrain from raising issues which, in his or her judgment, are without merit, unless counsel's appraisal of the merits is patently wrong. *People v. Simms*, 192 Ill. 2d

348, 362 (2000). Thus, the inquiry as to prejudice requires that the reviewing court examine the merits of the underlying issue, for a defendant does not suffer prejudice from appellate counsel's failure to raise a nonmeritorious claim on appeal. *Simms*, 192 Ill. 2d at 362. Appellate counsel's choices concerning which issues to pursue are entitled to substantial deference. *Rogers*, 197 Ill. 2d at 223.

¶ 41    The State first argues that defendant's claim is barred by *res judicata* because "he could have raised his standby-counsel interference claim in his initial post-conviction petition." The State fails to cite any authority to support its contention in this single paragraph argument. Illinois Supreme Court Rule 341(h)(7) requires an appellant to include in its brief an "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008). It is well-settled that a contention that is supported by some argument but does not cite any authority does not satisfy the requirements of Rule 341(h)(7), and bare contentions that fail to cite any authority do not merit consideration on appeal. *Wasleff v. Dever*, 194 Ill. App. 3d 147, 155-56 (1990). Arguments unsupported by citation to relevant legal authority are considered as forfeited on appeal. *Id.*

¶ 42    Further, "the doctrine of *res judicata* bars consideration of issues that were previously raised and decided on direct appeal." *People v. Blair*, 215 Ill. 2d 427, 443 (2005). Forfeiture refers to "issues that could have been raised, but were not, and are therefore barred." *Id.* at 444. In the trial court, the State had argued that defendant's claim that his waiver of counsel was not voluntary was barred by *res judicata* because the issue had been decided on direct appeal, which the trial court rejected in its order. As noted above, defendant has not raised whether his waiver was voluntary on appeal. The State now asserts that the trial court made no finding regarding *res*

*judicata* as to defendant's claim of interference by standby counsel. However, the State did not argue at the evidentiary hearing that the interference claim was barred by *res judicata* or forfeiture, but rather argued the merits of the claim. The doctrine of forfeiture applies equally to the State and the State may forfeit an argument that the defendant forfeited a claim by failing to raise it earlier. *People v. McKown*, 236 Ill. 2d 278, 308 (2010) *(citing People v. Williams,* 193 Ill. 2d 306, 347 (2000)). As the supreme court put it, "[i]n effect, the State forfeited its ability to argue forfeiture by the defendant." *Id*. Since the State never raised forfeiture of this claim in the postconviction proceedings in the trial court, it has forfeited its own ability to raise the claim for the first time in this court.

¶ 43     Turning to the merits, we examine whether defendant's contention that his initial standby counsel interfered with his right to self-representation has merit to support his claim of ineffective assistance of appellate counsel. "Both the Federal and State Constitutions grant to an accused the right of self-representation in criminal proceedings." *People v. Gibson*, 136 Ill. 2d 362, 374-75 (1990) (citing U.S. Const., amends. VI, XIV; Ill. Const.1970, art I, § 8); see also *Faretta v. California*, 422 U.S. 806, 821 (1975) ("The Sixth Amendment, when naturally read, thus implies a right of self-representation."). "The right of self-representation does not carry with it a corresponding right to legal assistance; one choosing to represent himself must be prepared to do just that." *People v. Redd*, 173 Ill. 2d 1, 38 (1996). The trial court has "broad discretion to appoint counsel for advisory or other limited purposes" and "to determine the nature and extent of standby counsel's involvement." *Id*. "Even where a trial court appoints standby counsel, the constitutional right to self-representation does not require a court to permit a 'hybrid' representation in which a defendant alternates between representing himself and having counsel represent him." *Id*. " '[T]he *pro se* defendant is entitled to preserve actual control over the case

20

he chooses to present to the jury,' and counsel's unsolicited participation 'should not be allowed to destroy the jury's perception that the defendant is representing himself.' " *Gibson*, 136 Ill. 2d at 377-78 (quoting *McKaskle v. Wiggins*, 465 U.S. 168, 178 (1984)).

¶ 44    "Standby counsel may assist a *pro se* defendant 'in overcoming routine procedural or evidentiary obstacles to the completion of some specific tasks, such as introducing evidence or objecting to testimony, that the defendant has clearly shown he wishes to complete' and may also help 'ensure the defendant's compliance with basic rules of courtroom protocol and procedure.' " *People v. Simpson*, 204 Ill. 2d 536, 562 (2001) (quoting *McKaskle*, 465 U.S. 168, 183 (1984)). A *pro se* defendant's right to represent himself is infringed if standby counsel makes or substantially interferes with any significant tactical decisions, controls questioning of witnesses, or speaks on defendant's behalf on any matter of importance. *People v. Ellison*, 2013 IL App (1st) 101261, ¶ 51 (citing *McKaskle*, 456 U.S. at 178).

> "A defendant's right to self-representation plainly encompasses certain specific rights to have his voice heard. The *pro se* defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in *voir dire*, to question witnesses, and to address the court and the jury at appropriate points in the trial." *McKaskle*, 456 U.S. at 174.

¶ 45    The trial judge, who allows a defendant to represent himself through the proceedings and "supervises the protection of the right throughout the trial, must be considered capable of differentiating the claims presented by a *pro se* defendant from those presented by standby counsel." *Id*. at 179. "Accordingly, the appearance of a *pro se* defendant's self-representation will not be unacceptably undermined by counsel's participation outside the presence of the jury."

*Id*. A defendant's right to self-representation is

> "adequately vindicated in proceedings outside the presence of the jury if the *pro se* defendant is allowed to address the court freely on his own behalf and if disagreements between counsel and the *pro se* defendant are resolved in the defendant's favor whenever the matter is one that would normally be left to the discretion of counsel." *Id*. at 179.

¶ 46    In the instant case, defendant asserts that standby counsel interfered with right to represent himself when she declined to give an opening statement on defendant's motion to quash arrest and suppress evidence. This pretrial motion occurred before the jury trial had begun and was heard by the trial court. After codefendants' attorneys had each given their respective opening statements on their motions to quash arrest, standby counsel informed the court:

> "Mr. Hill has asked me to make an opening statement on his behalf. I have advised him that I don't believe the particular motion lies which is being argued by him. He is now discussing that with me. He and I have discussed this at length over the last few months."

¶ 47    Defendant contends that standby counsel's "statement to the court that she did not believe the motion was meritorious to [defendant] interfered with [defendant's] ability to represent himself on the motion before he could litigate it." According to defendant, standby counsel's statement substantially interfered with his ability "to make significant tactical and strategic decisions." He argues that counsel's statement imparted her own beliefs into the case and frustrated his ability to defend himself and led defendant "to adopt the opening statements of his co-defendants, which were certainly not tailored to defend him."

¶ 48    In *Simpson*, 204 Ill. 2d at 562, the Illinois Supreme Court considered a similar claim

where the defendant asserted to his right to self-representation and then claimed his standby counsel was ineffective in assisting him during trial. The defendant urged the supreme court "to extend the duties of standby counsel to encompass preparation of a legal defense and mitigation even when the defendant opts to assert his constitutional right to self-representation." *Id.* The defendant contended that his standby counsel was ineffective for failing to investigate certain mitigation evidence. *Id.* at 563. The court rejected the defendant's argument and observed that it was defendant's responsibility to prepare a legal defense and mitigation throughout trial and sentencing. *Id.* at 564. The supreme court stated:

> "To succeed on a claim of this nature, defendant should be required to establish that the actions of standby counsel prevented defendant from accomplishing something he otherwise intended to accomplish or would have been able to accomplish if standby counsel had not prevented him from doing so, either through unreasonable advice or direct action." *Id.* at 566.

¶ 49 Here, it was defendant's burden to set forth a substantial showing of a deprivation of his constitutional rights. However, defendant has not alleged that standby counsel's action prevented him from accomplishing something he intended to accomplish or would have been able to accomplish. Defendant has not asserted that standby counsel substantially interfered by making any significant tactical decisions, controlling the questioning of witnesses, or speaking on defendant's behalf on any matter of importance. See *Ellison*, 2013 IL App (1st) 101261, ¶ 51 (citing *McKaskle*, 456 U.S. at 178). Rather, the record supports the opposite conclusion. Defendant controlled the organization and content of his own defense, made motions, argued points of law, participated in *voir dire*, questioned witnesses, and addressed the court and the jury at appropriate points in the trial. See *McKaskle*, 456 U.S. at 174. Given her limited role,

23

standby counsel should not have given the opening statements at the motion to quash arrest.

Additionally, it is well established that opening statements are not evidence. See *People v. Burton*, 338 Ill. App. 3d 406, 417 (2003).

¶ 50    Further, the disagreement between defendant and standby counsel was resolved in defendant's favor because defendant was not prevented from giving an opening statement. Instead, defendant was offered the opportunity to make the opening statement himself, but chose to adopt opening statements from his codefendants. Defendant then proceeded on the motion to quash arrest over several dates between May and December 1995. Standby counsel did not participate in the hearing, but did issue subpoenas for all of defendant's requested witnesses. Defendant called multiple witnesses on the motion and engaged in direct and cross examination. While the trial court denied the motion, there is no suggestion that standby counsel's statement to the court had any impact on the trial court's ruling. Instead, defendant offers vague conclusory assertions that the statement "frustrated his ability to defend himself," but fails to offer any example of how this statement impacted his trial proceedings.

¶ 51    Moreover, defendant's motion to quash arrest and suppress evidence lacked merit. At the conclusion of his case on the motion, defendant argued that Officer Kazupski "had no jurisdiction" once he left the Venture store and "no power to arrest" because he was off duty and working as a security guard at that time. This argument is meritless because a police officer has "a duty, seven days a week, 24 hours a day, to maintain public order," and Officer Kazupski was performing that duty when he observed defendant committing a burglary. *People v. Smith*, 342 Ill. App. 3d 289, 295 (2003) (citing *People v. Barrett*, 54 Ill. App. 3d 994, 996-97 (1977)).

> " '[T]he fact that a police officer is on or off duty, or in or out of uniform[,] is not controlling. "It is the nature of the act performed, not the clothing of the actor or

24

even the status of being on duty, or off duty, which determines whether the officer has acted under color of law." ' " *Barrett*, 54 Ill. App. 3d at 996 (quoting *Stengel v. Belcher*, 522 F.2d 438, 441 (6th Cir. 1975), quoting *Johnson v. Hackett*, 284 F.Supp. 933, 937 (E.D.Pa.1968)). See also *Banks v. City of Chicago*, 11 Ill. App. 3d 543, 549-50 (1973) ("The nature of a policemen's job is that he be fit and armed at all times, whether on or off duty, and subject to respond to any call to enforce the laws and preserve the peace.")

Officer Kazupski was well within his role as both a police officer and security guard to effectuate defendant's arrest. Thus, the trial court correctly found the arrest to have been legal and denied the motion after noting that it had heard the evidence "over a seven-month period of time." Defendant did not challenge the trial court's denial of his motion to quash arrest on direct appeal or in either of his postconviction petitions, including the petition at issue in this case.

¶ 52    The record established that defendant's right to self-representation was "adequately vindicated" where he was able to speak freely before the trial court and present his case on the motion in full. Defendant failed to satisfy the burden required at the evidentiary hearing. As the trial court found, "it cannot be said that standby counsel's refusal to make the opening statement or the comments she made in so doing amount to an interference with his 6th amendment right to self-representation." After finding standby counsel did not interfere with defendant's right to right to defend himself, the trial court concluded that "appellate counsel's decision not to raise [this issue] did not amount to deficient performance which prejudiced [defendant's] appeal." Based upon the record on appeal, defendant has not established any of the factors for interference of standby counsel, *i.e.*, that standby counsel made or substantially interfered with any significant tactical decisions, controlled questioning of witnesses, or spoke on defendant's behalf

on any matter of importance, and we find that the trial court's findings were not against the manifest weight of the evidence. Accordingly, the trial court's denial of defendant's postconviction petition following an evidentiary hearing was not manifestly erroneous.

¶ 53    Based on the foregoing reasons, we affirm the decision of the circuit court of Cook County.

¶ 54    Affirmed.